## L. A. RANKIN ET AL. v. J. T. RANKIN, EXECUTOR.

### No. 2264. Decided December 11, 1912.

**1.—Evidence—Deed—Fraud—Undue Influence—Declarations of Grantor.**

Declarations of a grantor before or after the making of a deed, as in the case of a will, are inadmissible to prove fraud or undue influence in obtaining it. (P. 456.)

**2.—Same—Case Stated.**

An aged mother conveyed to the wife of her son 100 acres out of a tract of 300 owned by her. Subsequently she conveyed to the same grantee the remaining 200 acres, both deeds on consideration of love and affection. About a year later she made a will bequeathing her property equally to another son, who was made executor, and her three daughters-in-law, with

provision that the value of the 100 acres conveyed as above be taken out of the share bequeathed to the grantee therein. Her son, the executor, attacked and sought to cancel the deed to the 200 acres as being obtained by the fraud and undue influence of the husband of the grantee. Held that proof of the declarations of the grantor, made at the time of executing her will, that such son had represented the conveyance of the 200 acres to be merely in lieu of the previous deed of 100, and for the correction of the field notes therein, and she had signed it with that purpose and understanding, was inadmissible to establish such facts. (Pp. 454-458.)

### 3.—Same—Declarations—State of Mind.

Declarations of the grantor, in order to be admissible as evidence of her state of mind, as distinguished from evidence of the facts recited in the declarations, must be so connected in point of time with the transaction in question as to justify the inference that such state of mind existed at that time. (Pp. 456-458.)

### 4.—Same—Court and Jury.

Declarations of the grantor made after the execution of the conveyance, here considered, are held to constitute no legal evidence either of the truth of the facts declared or of the state of mind of the grantor at the time of making the deed; and their sufficiency being for the court, it was error to submit the issue to the jury on such evidence. (P. 458.)

### 5.—Evidence.

Proof of an offer of an attorney to give to one of his adversaries all that he claimed if he would have nothing to do with the case, did not tend to prove the issues involved and was improperly admitted. (Pp. 458, 459.)

### 6.—Same.

Evidence that one claiming land under deed from testatrix did not object to its being placed on the inventory of her estate, was irrelevant unless pertinent as a link in a chain of circumstantial evidence. (P. 459.)

### 7.—Same.

All evidence which would be admissible against a party to show that a deed was obtained by his fraud or undue influence in a case where he was the grantee therein, would be equally admissible on the issue of his having so obtained conveyance to his wife in order that he might obtain control over it. (P. 459.)

Error to the Court of Civil Appeals, Third District, in an appeal from Waller County.

J. T. Rankin, as executor, sued L. A. Rankin and others and had judgment. It was affirmed on appeal by defendants, who then obtained writ of error.

*A. J. Harvey, Lipscomb & Pool*, and *W. W. Searcy*, for plaintiffs in error.—The declarations of the grantor made after the execution of a deed are not admissible in evidence in disparagement of the title of the grantee. Groom v. Rush, 27 Texas, 234; Pierce v. Wimberly, 78 Texas, 190; Bradford v. Taylor, 74 Texas, 178; Smith v. Dunman, 9 Texas Civ. App., 319; Hinson v. Walker, 65 Texas, 106; Kennedy v. Upshaw, 64 Texas, 418; Throckmorton v. Holt, 180 U. S., 674.

The declarations or statements made by Mrs. Charlotte E. Rankin to witness, Hanney, after the execution of the deed, and in the absence of the grantee, were the merest hearsay and not admissible for

any purpose, Kennedy v. Upshaw, 64 Texas, 411; Wertz v. Schneider, 96 S. W., 60; Simon v. Middleton, 51 Texas Civ. App., 531; Watterman v. Whitney, 11 N. Y., 157; In re Calkins, 112 Cal., 301; In re Arnold Eb., 82 Pac., 256.

Declarations of the grantor in a deed made after the execution of the same and in the absence of the grantee are not admissible in evidence for the purpose of showing that undue influence was exercised or fraud was practiced on the grantor to induce him to execute the deed. Wertz v. Schneider, 96 S. W., 59; Kennedy v. Upshaw, 64 Texas, 411; Simon v. Middleton, 51 Texas Civ. App., 531; Gilbert v. Odum, 69 Texas, 670; Masterson v. Jordan, 24 S. W., 549; Anglin v. Barlow, 45 S. W., 827; Nix v. Cole, 29 S. W., 561; 16 Cyc., pp. 1192-97; Taylor on Ev., 1201-2; Underhill Evidence, pp. 165-119a.

The statements made by Mrs. Rankin in the absence of the grantee, and after the execution of the deed, besides being mere hearsay, were of an inflammatory nature, and calculated to prejudice the minds of the jury against the defendants. Kellogg v. McCabe, 92 Texas, 199; Thompson v. Brown, 4 Wall., 471; 1 Jones on Ev., 137; 3 Wigmore on Ev., 1904-6; 1 Wigmore on Ev., 30-42, pp. 115-17.

R. E. Hanney, having been named by Mrs. Charlotte E. Rankin in her will as joint independent executor with J. T. Rankin, and having qualified as such executor, could not voluntarily abandon the trust, and, being one of the executors under said will, could not testify as to conversation with Mrs. Charlotte E. Rankin, etc. Art. 2302, Sayles Statutes; Ray v. Whitaker, 92 Texas, 346.

The court erred in permitting the witness, Gus Rankin, while on the stand, to testify that "Judge Lipscomb, that man right there, came to me and stated that if I would have nothing to do with the suit that Harry W. Rankin would give me my part of the land. I told him no; that I would not be a party to the robbing of my brothers." Fox v. Willis, 60 Texas, 376.

The fact that H. W. Rankin was present when the appraisers were making up the inventory could in no way affect or prejudice the rights of Mrs. L. A. Rankin. Fox v. Willis, 60 Texas, 376; Clapp v. Engledow, 82 Texas, 180; McKay v. Treadway, 8 Texas, 180.

*J. D. Harvey* (*Keet & McDade, J. V. Meek,* and *J. P. Buchanan,* of counsel), for defendant in error.—Where the validity of a deed is assailed on the ground of undue influence, or other mental condition on the part of the grantor, at the time of the execution of such deed, subsequent declarations of the grantor are admissible for the purpose of showing such mental condition and the effect such undue influence had on the grantor. Campbell v. Berrera, 32 S. W., 725; In re Burns Est., 52 S. W., 99; McIntosh v. Moore, 22 Texas Civ. App., 22; Waterman v. Whitney, 62 Am. Dec., 72 (11 N. Y., 157); Reel v. Reel, 9 Am. Dec., 663 (1 Hawks (N. C.), 248); McTaggart v. Thompson, 14 Pa. St., 149; Shailer v. Bumstead, 99 Mass., 112; Lane v. Moore, 21 Am. St., 431 (151 Mass. 87); Rambler v. Tryon, 10 Am. Dec., 447 (7 Serg. & R. (Pa.), 94); Dennis v. Weeks, 51 Ga., 24; Bates v. Bates, 1 Am. Rep., 261 (27 Iowa, 110); Todd v. Fenton, 66 Ind., 25; Reynolds v. Adams, 32 Am. Rep., 21 (90 Ill., 134);

Manatt v. Scott, 68 Am. St., 298 (106 Iowa, 203); Beaubein v. Ci-cotte, 12 Mich., 459; Est. Goldthorpe, 58 Am. St., 405 (94 Iowa, 336); Russling v. Russling, 35 N. J. Eq., 120; Thompson v. Ish, 17 Am. St., 556 (99 Mo., 160); Jones v. McLellan, 76 Me., 49; Note to Jackson v. Kniffen, 3 Am. Dec., 397; Note to Hess' Will, 31 Am. St., 690; Marx v. McGlynn, 88 N. W. 358; Potter v. Baldwin, 133 Mass., 427; Griffith v. Diffenderffer, 50 Md., 466; Stephenson v. Stephenson, 62 Iowa, 163; 16 Cyc., pp., 1180, 1181.

When a deed is procured by fraud or undue influence practiced upon the grantor by the husband of the grantee, and the grantee paid no valuable consideration therefor, the deed will be canceled, whether the grantee had knowledge of such illegal conduct of her husband, or not. Hence testimony touching the conduct of the husband, offered upon such issues of fraud and undue influence, will not be excluded on objection made by the grantee to the effect that the deed placed title in grantee as her separate property, and that she was in no way responsible for the actions of her husband. Bass v. Peevy, 22 Texas, 296; Roberts v. Bartlett, 89 S. W., 862; 2 Pom. Eq. Jr., sec. 918; Cox v. Miller, 54 Texas, 27; Pioneer, etc., v. Baumann, 58 S. W., 51; Graham v. Burch, 44 Minn., 33; Ranken v. Patton, 65 Mo., 378; Baker v. Loomis, 23 Am. Rep., 123; 12 Cyc., p. 587 (Paragraph "d"); 6 Cyc., p. 319; 20 Cyc., p. 469.

Suggestions of suppressing testimony, and attempts to purchase silence of a party in interest whose testimony is material to the plaintiff by defendant offering to concede to such party in interest, as a consideration for his silence, a share in the subject matter of the suit, are competent evidence against such defendant in a suit involving the issues of fraud and undue influence alleged to have been practiced by defendant in the acquisition of such subject matter. Railway v. McMahon, 103 Ill., 488 (42 Am. Rep., 29); Green v. Woodbury, 48 Vt., 5; Egan v. Bowker, 87 Mass., 452; Cruikshank v. Gordon, 118 N. Y., 187; Hastings v. Stetson, 130 Mass., 77; Emerson v. Boynton, 77 Mass., 395; Best on Presumptions, p. 129 sec. 147; 16 Cyc., pp. 1058, *et seq.*; 11 Am. & Eng. Enc. of Law (2nd ed.); pp. 503, *et seq.*

Mr. Chief Justice Brown delivered the opinion of the court.

We copy the following findings of fact by the Court of Civil Appeals:

"From the evidence in the record, we find the following to be the facts as bearing on the issues made by the pleadings:

"1. Mrs. Charlotte Rankin, on June 23rd, 1897, executed a deed to Mrs. L. A. Rankin, wife of Harry W. Rankin, to 100 acres of land out of a 300-acre tract, in Ellis County, Texas, the consideration recited in said deed being $25 cash and love and affection. No attack is made on this deed.

"2. On November 24th, 1898, the said Mrs. Charlotte Rankin executed a deed to the said Mrs. L. A. Rankin for the remaining 200 acres of said tract of land, for the recited consideration of $50.00 cash, and love and affection. This is the deed which is attacked in this suit.

"3. Each of said deeds conveyed title to Mrs. L. A. Rankin in her separate right. No consideration was paid for the execution of either of said deeds. Both of said deeds were in the handwriting of Harry Rankin, were executed at his house, and when the last deed was executed there was no one present besides the grantor, Harry Rankin and his wife, except one J. T. Houx, who was a particular friend of said Harry Rankin, and who signed the same, and also a written memorandum attached thereto, as a witness. The evidence does not fully develop the circumstances under which the first deed was executed, but does show that the same was at the solicitation of said Harry Rankin.

"4. Said deed to the 200 acre tract was executed under the following circumstances: Mrs. Charlotte Rankin being at the house of Harry Rankin was informed by him that the first deed incorrectly described the land intended to be conveyed, and presented her the second deed, informing her that it was a substitute for the former deed, and conveyed the same land intended to be conveyed by the former deed. Believing these statements to be true, Mrs. Rankin signed the same, and also the memorandum attached to the same. This memorandum recited that Mrs. Charlotte Rankin was to retain possession of said land during her life time and was to pay all taxes thereon.

"5. This deed was witnessed by said Houx only, and was not acknowledged before any officer, and was not filed for record until August 17, 1908, nearly ten years after its execution, and some nine months after the death of Mrs. Charlotte Rankin. Neither Harry Rankin nor his wife ever set up any claim to said land during the lifetime of Mrs. Charlotte Rankin, and the execution of said deed, as a deed containing 200 acres of land, was not known to any of the other heirs of Mrs. Charlotte Rankin until some months after her death. Some time after the execution of said last deed they learned that Mrs. Charlotte Rankin had executed a deed to the wife of Harry Rankin for 100 acres of said Ellis county tract. This deed had not been filed for record when the second deed was executed, but was filed for record in Ellis County February 13th, 1899.

"6. At the time of the execution of said deeds, Mrs. Charlotte Rankin was over seventy years old; she was, and for some time prior thereto had been, in feeble health and weak in mind, and on account of the condition of her eyes could not see without glasses, and then with great difficulty. This physical and mental condition so continued to the time of her death.

"7. Mrs. Charlotte Rankin had four sons, all of whom, except T. J. Rankin, with whom she lived, were married, and all of whom lived in the same town with her. So far as the record shows, none of the parties ever lived in Ellis County.

"8. Mrs. Charlotte Rankin never knew, nor did she have any reason to suppose, that the second deed was other than it was represented to her to be at the time she signed the same.

"9. The land conveyed in the second deed was worth about $40 per acre when said deed was executed, and from $70 to $75 per acre at the time of the trial.

"10. Harry Rankin had great influence with his mother.

"11. By said deeds conveyance was made to Mrs. L. A. Rankin in her separate right, because there were unsatisfied judgments against Harry Rankin and he was insolvent.

"12. Mrs. Charlotte Rankin executed a will on October 21st, 1899, at which time she thought the said deeds executed by her had perhaps been destroyed, but did not feel sure that such was the case. In said will she bequeathed her property equally to her son, T. J. Rankin, and to her three daughters-in-law, in trust for their children, except that in addition to his one-fourth, she also bequeathed to her son, T. J. Rankin, with whom she had long made her home, the home in which she lived. She was at the time of the execution of said deeds a widow, and so remained to the time of her death. The fifth clause in said will was as follows: 'I have heretofore given a deed to Lou Adell Rankin to one hundred acres of land in Ellis County, and in the event said deed was not destroyed but still exists, I value the same at $2,500, and desire that the same be charged up to the interest of said Loudell Rankin in making division of my said estate.'

"In addition to the general issue, the defendants plead the four years' statute of limitations. No issue was raised by the pleadings as to want of proper parties. The jury returned a verdict for the plaintiff, appellee herein, and judgment was entered cancelling said deed, from which judgment the defendants appealed."

It is admitted by attorneys for all parties and held by the Honorable Court of Civil Appeals that the declarations of Mrs. Rankin were not admissible to prove the fraud charged to have been practiced upon her by H. W. Rankin nor to prove the undue influence claimed to have been exercised over her whereby she was induced to execute the deed in question. The general rule on this point is expressed thus: "Where the execution of a will is proved in the mode required by law, the declarations of the testator, made before or after the execution of the instrument, are not competent to prove fraud, duress or forgery, or to disprove the execution—they are hearsay, merely; but such declarations, made at the time the instrument was executed, are admissible as part of the *res gestæ*. The rule upon these points is the same in the case of wills that it is in the case of deeds."

It is conceded by counsel for defendant in error, in a candid and clear presentation of his client's case, that the declarations of Mrs. Rankin, made subsequent to the making of the deed, not in the presence of H. W. Rankin nor his wife, are not competent to prove the fraud or the undue influence upon which this action rests. But it is claimed that the evidence was pertinent to prove the "state of Mrs. Rankin's mind." It must be the condition of her mind at the time of the transaction which is permitted to be proved, because such condition at a different date could not throw any light on the transaction. The declarations made by Mrs. Rankin that a certain fact had been misrepresented to her at a previous time might be so extravagant as to show a disordered mind when she made the declaration, but could not prove her mental condition when the deed was made, unless

made so near to that date as to justify the inference that it existed at that time. It has generally been held that the truth or falsity of the declaration is of no importance except as it affects the question of mental weakness.

In the case of Throckmorton v. Holt, 180 U. S., 573, the Supreme Court of the United States, speaking through Judge Peckham, said:

"After much reflection upon the subject, we are inclined to the opinion that not only is the weight of authority with the cases which exclude the evidence both before and after the execution, but the principles upon which our law of evidence is founded necessitate the exclusion. The declarations are purely hearsay, being merely unsworn declarations, and, when no part of the *res gestæ,* are not within any of the recognized exceptions admitting evidence of that kind. Although in some of the cases the remark is made that declarations are admissible which tend to show the state of the affections of the deceased as a mental *condition,* yet they are generally stated in cases where the mental *capacity* of the deceased is the subject of the inquiry, and in those cases his declarations on that subject are just as likely to aid in answering the question as to mental capacity as those upon any other subject. But if the matter in issue be not the mental capacity of the deceased, then such unsworn declarations, as indicative of the state of his affections, are no more admissible than would be his unsworn declarations as to any other fact.

"When they are not a part of the *res gestæ,* declarations of this nature are excluded because they are unsworn, being hearsay only, and where they are claimed to be admissible on the ground that they are said to indicate the condition of mind of the deceased with regard to his affections, they are still unsworn declarations, and they cannot be admitted if other unsworn declarations are excluded. In other words, there is no ground for an exception in favor of the admissibility of declarations of a deceased person as to the state of his affections, when the mental or testamentary capacity of the deceased is not in issue. When such an issue is made, it is one which relates to a state of mind which was involuntary and over which the deceased had not the control of the sane individual, and his declarations are admitted, not as any evidence of their truth, but only because he made them, and that is an original fact from which, among others, light is sought to be reflected upon the main issue of testamentary capacity. The truth or falsity of such declarations is not important upon such an issue (unless that for the purpose of showing delusion it may be necessary to give the evidence of their falsity), but the mere fact that they were uttered may be most material evidence upon that issue. The declarations of the sane man are under his control, and they may or may not reflect his true feelings, while the utterances of the man whose mind is impaired from disease or old age are not the result of reflection and judgment, but spontaneous outpourings arising from mental weakness or derangement. The difference between the two, both as to the manner and subject of the declarations, might be obvious. It is quite apparent therefore that declarations of the deceased are properly received upon the question of his state of mind, whether mentally strong and capable or weak and incapable,

and that from all the testimony, including his declarations, his mental capacity can probably be determined with considerable accuracy. Whether the utterances are true or false cannot be determined from their mere statement, and they are without value as proof of their truth, whether made by the sane or insane, because they are in either case unsworn declarations.''

We first note that there is nothing in the declarations of Mrs. Rankin concerning the fraud which tends to prove that her mind was weak at the time she made the deed. According to the evidence of the witness her mind was quite clear at the date of her detailed statements. If those statements were correct, she remembered well the details of the transaction, which fact tends to negative the claim of mental weakness. If they were not true, but simply the creatures of a disordered mind, then they show no reason to disturb her conveyance because there is no proof of fraud or improper influence. It follows that the judge of the District Court erred in submitting the issues of fraud and undue influence to the jury, there being no sufficient or competent evidence to prove either issue, and the judgment must be reversed.

It was the duty of the district judge, before whom the trial was had, to decide whether or not the declarations of Mrs. Rankin tended to prove that at the time she executed the deed in question her mind was in such condition as to disqualify her to execute that instrument or to render her susceptible to undue influence over her will power by her son. We are of the opinion that the declarations were not competent to prove either fact and should have been excluded from the jury and should not be admitted upon another trial.

We have hesitated to remand this case upon the record as it is before us, but we realize that fraud is oftentimes very difficult to prove and is peculiarly a fact which must be established by circumstantial evidence. It is very difficult to express in a record the full force of evidence of that character. The trial judge has a better opportunity to determine the admissibility of evidence—that is, whether it tends to prove a given fact—than this court has from the record. On the other hand, juries are liable to give undue weight to circumstances which characterize this character of litigation, which fact renders more imperative the exercise by the judge of his judgment upon the relevancy of the evidence upon issues of fraud or unfairness in such transactions.

In submitting this case to another jury the declarations of Mrs. Rankin as to the fraud of H. W. Rankin, or as to influence exercised or deception practiced upon her by him, should not be permitted to go to the jury, because as a matter of law such declarations are not competent to prove either fact and the declarations relied upon do not tend to prove mental condition at the time the deed was executed.

It is unnecessary to pass upon the objection made to the testimony of the witness Hanney, as we hold the declaration related by him to be inadmissible.

The evidence to the effect that Lipscomb, the attorney for plaintiff in error, had offered to give Gus Rankin his part if he would have

nothing to do with the case was improperly admitted; it did not tend to prove or disprove any issue in this case.

As the record comes to this court, we are not prepared to say that there was error in admitting the evidence to the effect that H. W. Rankin did not object to the placing of the land on the inventory of his mother's estate. Of itself that action could prove nothing, but it might be pertinent in a chain of circumstantial evidence.

We believe that we have stated the principles which should govern in another trial sufficiently without discussing each assignment. If H. W. Rankin procured his mother to make the deed to the land in the name of his wife, in order that he might have the control of it as his own, all evidence which would be admissible if the deed had been to H. W. Rankin will be admissible in this case on another trial.

It is ordered that the judgments of the District Court and Court of Civil Appeals be reversed and the cause remanded to the District Court for trial in accordance with this opinion.

*Reversed and remanded.*