McKAY v. McKAY et al.　(No. 1041.)*

(Court of Civil Appeals of Texas. Amarillo. Oct. 11, 1916. Rehearing Denied Nov. 22, 1916.)

1. APPEAL AND ERROR ⬖1011(1)—REVIEW—FINDINGS OF FACT.

Where the testimony is sufficient to raise an issue, though considerably mooted, it is the duty of the Court of Civil Appeals to adopt the finding of the trial court on the issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3988; Dec. Dig. ⬖1011(1).]

2. EVIDENCE ⬖122(3) — PERSONS — DECLARATIONS OF DECEASED—EXECUTION OF DEED.

In an action to cancel a deed from husband to wife, declarations of the deceased grantor, made to the lawyer who made the deed just prior to its preparation and execution, that he wanted the deed prepared because he would "have no peace" unless he did it, were admissible as part of the res gestæ to prove a condition of mind of the deceased in the free assertion of his own will, and that the will of the wife was substituted for his.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 340; Dec. Dig. ⬖122(3).]

3. CANCELLATION OF INSTRUMENTS ⬖43 — PLEADING—ISSUES.

In an action to cancel a deed from husband to wife an allegation in the petition that the wife, at a later date, entered into a written agreement to care for the husband while he lived, to procure another deed, with a general denial, was not sufficient to raise as a litigated issue the question of ratification of the prior deed, by another provision in the contract.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 96–99; Dec. Dig. ⬖43.]

4. CONTRACTS ⬖111 — CONSIDERATION — RESUMPTION OF MARITAL RELATIONS.

An agreement for the resumption of marital rights as part of the consideration for a deed made by a husband to his wife, being a right to which a husband, especially as the injured party, was entitled to without bargain, was void and rendered the whole contract, including an agreement for ratification of a prior deed, illegal, since public policy will not permit a party to enforce a promise obtained by an illegal promise although connected with another which is legal.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 515–520; Dec. Dig. ⬖111.]

Appeal from District Court, Hemphill County; C. Coffee, Special Judge.

Suit by G. B. McKay and others against Alice McKay to cancel two deeds of conveyance. From a judgment canceling one of the deeds, defendant appeals. Affirmed.

H. E. Hoover and Hoover & Dial, all of Canadian, for appellant. Baker & Willis, of Canadian, for appellees.

HENDRICKS, J. The appellees McKay, the surviving brothers and sisters of Hugh McKay, deceased, sued Alice McKay, the appellant and surviving wife of said Hugh McKay, for the purpose of canceling two certain deeds of conveyance, executed by Hugh McKay, the deceased husband, in his lifetime, to his wife, Alice McKay.

The principal grounds for cancellation of said instrument are, in substance, that, at the time of the execution of the deeds of conveyance, Hugh McKay had become so enfeebled in intellect that he did not fully comprehend the effect of the instruments so executed by him, and that in such condition his wife, Alice McKay, dominated the disposition of said property in her favor, substituting her mind for his to the extent that her acts constituted undue influence.

The trial court found, without the aid of a jury, that the property in controversy—the east one-half of section 152, block 41, H. & T. C. Ry. Co. survey, and all of section No. 151, block 41, H. & T. C. Ry. Co. survey, in Hemphill county, Tex.—constituted the separate estate of the deceased husband, Hugh McKay, at the time of the conveyance of same to his wife, Alice McKay. The court also found that on the 1st day of November, 1909, the date of the execution and delivery of the conveyance to the half section of land in controversy herein, and the first in point of time, Hugh McKay's mind was feeble to the extent that he was susceptible of being unduly influenced to "transact business matters in such manner as not to reflect his will but the will and desire of his wife, whose influence he was under"; and also found that the mind of McKay was "overcome by excessive importunity on the part of defendant, Alice McKay, and that said act and deed did not express the will and desire of said Hugh McKay, but the will of Alice McKay, and that he would not have executed the same except for the weak and feeble condition of his mind, and undue influence of Alice McKay over his will power."

The deed to section 151 (the whole section) was executed and delivered by Hugh McKay to his wife on the 12th day of September, A. D. 1910.

Contemporaneous with the execution of the last conveyance, on the 12th day of September, 1910, Hugh McKay, the husband, and Alice McKay, his wife, executed what is designated in this record as a postnuptial agreement, purporting to be a settlement and adjustment of certain property rights as well as the disturbed marital rights, between said parties.

Subsequent to the execution of the first deed to the half section above mentioned, and prior to the execution of the second deed to the whole section, and the accompanying postnuptial agreement, Hugh McKay had instituted in the district court of Hemphill county an action for divorce against his wife, Alice McKay, also praying for a cancellation of the first deed of conveyance above mentioned. In the postnuptial agreement Hugh McKay agreed to dismiss said suit and also affirmed the first deed of conveyance as valid. The postnuptial agreement also contains this provision:

"The said Alice McKay agrees to take the said Hugh McKay back as her lawful and wedded husband, and to keep and care for him through life, in sickness and in old age, and to see that his wants are provided for, and that he receives the comforts of life, in a manner in keeping with his station in life."

In said agreement it was also provided:

"That any property belonging to the separate estate of either shall not be sold or conveyed without such sale and conveyance being agreed to and joined in by both. * * *"

The particular instrument also recited that Alice McKay had provided "some means from her separate estate," which had been used for the advancement of the community estate as well as for the separate estate of her husband, and in consideration of all of said matters Hugh McKay agreed to convey to the wife, as her separate estate, all of section No. 151, above described.

The trial court found that the deed to the half section was obtained by undue influence, but concluded as to the conveyance by McKay to his wife of the whole section No. 151, subsequently executed:

"That the evidence fails to show that undue influence was brought to bear upon him to cause the execution of said deed, or that it was not his will, as expressed therein."

He, however, found additionally that Hugh McKay remained under the influence of Alice McKay from the time of the execution of the first deed, and that the ratification instrument, executed at the time of the second deed, affirming the first deed, was the expression of the will of Alice McKay, and that Hugh McKay would not have executed said instrument except for the undue influence of the wife. Judgment was rendered for Mrs. McKay for the whole section, but in favor of the heirs for the half section.

This record fails to disclose the exact age of Hugh McKay at the time of the execution of said instrument, but it is to be inferred that he was of an age between 70 and 80 at said dates. The age of the wife is not shown, nor can the same be inferred.

The principal presentation of error by the appellant, Mrs. McKay, addressed to the action of the trial court in canceling the deed to the half section, is, in effect, that there was not sufficient evidence to support the judgment so rendered. The assignment also assumes the form that such judgment is "contrary to the great preponderance of the evidence."

The attorney who represented Hugh McKay in the preparation of said instrument testified that, prior to the time of the execution of the deed, McKay solicited him to prepare the same; that he then refused to act in the matter; that subsequently McKay came to

his office and informed him that Mrs. McKay, at the home, wished to see him; that, accompanied by McKay, he went to the home and in conversation with Mrs. McKay for a considerable period of time, in the presence of Mr. McKay, with reference to the instrument, she "insisted that he should make it and gave her reasons therefor." "The conversation lasted quite a while; Mrs. McKay urging him to make the deed, and Mr. McKay saying nothing. * * * He left with me, insisting that he should make the deed, saying that he would have no peace unless he did it." Another portion of this witness' testimony is as follows:

"Mr. McKay said very little. What he did say—I cannot recollect the words, * * * except that he was not consenting. * * *

[1] At the trial, on account of the testimony of opposition witnesses, it became a controverted issue as to the condition of Hugh McKay's mind addressed to the question of feebleness of intellect, and the trial court, as stated, found as a fact that:

"Hugh McKay's mind was weak and feeble to the extent that he was susceptible of being unduly influenced to transact business in such a manner as not to reflect his will, but the will and desire of his wife."

Without reproducing the testimony, we find that the same was sufficient to raise the particular issue, though considerably mooted. It is our duty to adopt the finding of the trial judge on the issue.

However, it is insistently and forcibly urged by appellant's counsel that the case, on the facts, not being one of dementia or mental incompetency, to the extent that the instrument would be void ab initio, the testimony of Judge Baker, with reference to the conversation and manifestations in Mrs. McKay's home, coupled with the declarations of McKay, were insufficient to cancel the deed. This testimony is assailed as to its probative force, as well as to its competency.

Chief Justice Brown, in the case of Rankin v. Rankin, 105 Tex. 456, 151 S. W. 529, says that:

"The general rule on this point is thus expressed: 'Where the execution of a will is proved in the mode required by law, the declarations of the testator, made before or after the execution of the instrument, are not competent to prove fraud, duress, or forgery, or to disprove the execution—they are hearsay, merely. But such declarations, made at the time the instrument was executed, are admissible as part of res gestæ. The rule upon these points is the same in the case of wills that it is in the case of deeds.'"

It is to be inferred from Judge Baker's testimony that proximately immediately following the instructions of McKay to draw the deed he prepared the instrument, and that the same was executed. He said McKay left tne house with him, insisting that he make the deed, and that he would have "no peace unless he did," and that he (Baker) went to the office, wrote the deed, and then McKay told him he wanted his will written. We infer they went together to the office.

The case of Beaubien v. Cicotte, 12 Mich.

486, reveals this condition: Matthias Bouleau, a gardener in Beaubien's employment, was permitted to testify to a conversation held with Beaubien shortly before his death, in which the deceased expressed regret at having married, and stated that he was not master at home; "that he was afraid of his wife, and was compelled to submit to her demands, or otherwise there would be trouble in the house." We infer that the statements were made shortly before the execution of the deed, and the question was one of capacity and of undue influence. Justice Campbell said:

"It has been held generally that the declarations of a testator concerning his feelings in regard to different persons are the best evidence of his real sentiments, where they are made sincerely and unreservedly. His feelings toward his wife, and towards relatives of his own who would be affected by such testamentary provision, * * * must necessarily be inquired into in order to get at the true state of the case."

A New York case is quoted, in which it is said:

"It is abundantly settled that upon either of these questions (either insanity or strength of intellect connected with fraud) the declarations of the testator, made at or before the time of the execution of the will, are competent evidence."

The Supreme Court of Alabama, in the case of Roberts v. Trawick, 13 Ala. 68, quoting the syllabus, which fairly reflects that part of the opinion, held:

"The declarations of a testator, made before and at the time of the execution of the will, or so shortly thereafter as to form a part of the res gestæ, and necessarily connected with it, may be received, to prove fraud or undue influence in its execution."

Schouler on Wills, vol. 1, § 243 (5th Ed.), sustains the same doctrine.

The case of Rankin v. Rankin, 105 Tex. 451, 151 S. W. 527, supra, limits the effect of evidence of this character to proof of condition of mind when the declarations are connected with the act and not declarations thereafter made in connection therewith; nor are the declarations received as proof of the truth of the statement, but as reflecting the condition of intellect and mental attitude, relevant, whether such condition of mind is susceptible of being overborne—at least we so construe the effect of said case.

The testimony of Baker establishes the fact of insistence by Mrs. McKay of her husband for the execution of a deed, and that McKay then sat in the room not consenting to its execution; that he yielded on account of a condition of mind, whether the fact was false or true, that he would have no peace unless he made the deed.

[2] The testimony of other witnesses establishes the fact of feebleness of mind and susceptibility to influence. If the declarations, as a part of the res gestæ, are admissible to prove a condition of mind as a handicap in the free assertion of his own will, the issue, found by the court, was sustained. We admit the force in a proper case of the case

of De Garca v. Galvan, 55 Tex. 57, cited by appellant, and which could be reinforced by the case of Henry v. Phillips, 105 Tex. 466, 151 S. W. 533, by Justice Dibrell, to the effect that incompetent declarations cannot form the basis of a finding in an appellate court, notwithstanding their presence in the record without objections. However, this record is different.

[3] It is also insisted that the postnupital agreement, on account of the ratification clause in the same, reaffirmed the deed to the half section which the trial court canceled. At the argument, it was mooted whether appellant could raise ratification on account of not having pleaded the same. Appellant's answer was merely a general denial, but it was insisted by her counsel that plaintiff's pleadings sufficiently averred the ratification agreement for the purpose of cancellation to the extent that the general denial produced the issue.

Paragraph A of plaintiffs' pleading is as follows:

"Plaintiffs allege that, at the time said deed to said whole section was executed, Alice McKay, for the purpose of deceiving the said Hugh, entered into a written agreement, promising to care for said Hugh while he lived, and thereby procured said deed and at the same time influenced the said Hugh to make his will in her favor as to his whole estate."

We are clear that this pleading with a denial did not raise the question of ratification as a litigated issue before a court and jury.

There is an interesting phase of the question, in this: It is noted that the postnuptial agreement recites:

"The said Alice McKay agrees to take said Hugh back as her lawful and wedded husband and to keep and care for him through life. * * *"

We construe this as an agreement for the resumption of marital rights along with other purposes as a part of the consideration for the conveyance of the whole section.

[4] It is to be inferred from the agreement, as well as from the testimony of the witnesses, that there had been an estrangement and separation between husband and wife. If McKay was bargaining for a resumption of his marital rights, something which in law he was entitled to without a bargain, such a consideration, we have no doubt, independent and alone, would be void and stamp a contract as illegal.

"Public policy forbids that the performance of such duty may be made the subject of barter and sale. The law fixes and regulates the marital relation on public considerations, and will not allow the parties to discard and renew it for money." Kesler's Est., 143 Pa. 386, 22 Atl. 892, 13 L. R. A. 581, 24 Am. St. Rep. 560.

"It is not a mere personal right affecting only the parties to the marriage, but a right which is an incident of the status of marriage, * * * and which must be exercised upon considerations arising from the nature of the right. It is given to the injured party to be used in the interest of justice and of society. It is as much against public policy to restore interrupted conjugal relations for money, as it is to continue them without interruption for the same consideration." Merrill v. Peaslee, 146 Mass. 460, 4 Am. St. Rep. 336.

Justice Walker said, in the case of Roberts v. Frisby, 38 Tex. 220:

"I do not know how far a husband will be morally bound by a postnuptial contract in which he hires his wife to live with him, but the legal obligation cannot be recognized in this court."

The case of Copeland v. Boas, 68 Tenn. (9 Baxt.) 223, 224, 40 Am. Rep. 89, decided by Judge Turney, is the same as the Roberts-Frisby Case on the facts, announcing the same principle. In studying this question, we find cases, where an innocent and injured spouse, in consideration of a dismissal of divorce suit, agrees to resume the marital relations and condones the fault of the other, receives something valuable for such action, the consideration is upheld, as it is an agreement to do something which the law does not compel the injured party to do. If the record here speaks anything, the husband is shown to be the injured party, according to the testimony of New, the officer; the acts testified to by him, evidently, in part, producing the divorce suit.

We think the record shows that a dominant part of the consideration to McKay as a part of the contract was the resumption of his marital rights, though blended with other considerations probably legal.

"If any part of a consideration is illegal, the whole consideration is void, because public policy will not permit a party to enforce a promise which he has obtained by an illegal act or an illegal promise, although he may have connected with this act or promise another which is legal." Seeligson v. Lewis, 65 Tex. 215, 216, 57 Am. Rep. 593; Wegner Bros. v. Biering & Co., 65 Tex. 506; Reed v. Brewer, 90 Tex. 144, 37 S. W. 418; Edwards County v. Jennings, 89 Tex. 618, 35 S. W. 1053.

If such a position is sound, a court of equity should not enforce the ratification contract.

It is argued that the trial court, in finding the deed to the whole section valid, and in pronouncing the accompanying postnuptial agreement void, produced such a contradictory finding of fact as to leave the matter undetermined relative to that phase of the case; also, that if he found the deed valid, thereafter made to the whole section, on account of the issue of undue influence not having been sustained as to that conveyance, the accompanying postnuptial agreement should also be valid.

Under more appropriate conditions and in a different condition of record, the argument of appellant would have considerable force; however, the manner in which we view the record, we deem the issue as to the agreement of ratification wholly immaterial.

Upon the whole, the judgment of the trial court, canceling the deed to the half section —the only land involved in this court— should be affirmed, and it is so ordered.