**Mollie EDWARDS, Appellant,**

v.

**Fred B. WILLIAMS, Appellee.**

**No. 3240.**

Court of Civil Appeals of Texas.

Eastland.

May 11, 1956.

Rehearing Denied June 15, 1956.

Randolph Scott and Charles Winikates, Dallas, for appellant.

Eades & Eades, Dallas, for appellee.

GRISSOM, Chief Justice.

Mrs. Mollie Edwards filed this suit on April 29, 1955. She sued her half-brother, Fred B. Williams, to cancel a deed executed by the mother of both to her son, Fred B. Williams, on March 2, 1926, and to partition the land so conveyed between plaintiff and defendant. Plaintiff alleged that her brother exercised undue influence on their mother, who was elderly, unable to read and write and incapable of handling or knowing the consequences of business transactions, and thereby procured a conveyance of the mother's interest in the land; that for several years afterwards their mother often made statements to the effect that part of the land had been conveyed to Mollie Edwards; that from the execution of the deed until about thirty days before this suit was filed Williams "through his demeanor, candor and actions, acquiesced in the knowledge that the plaintiff, Mollie Edwards, had a one-fourth (¼) interest" in said land.

Defendant pleaded 2, 3, 4, 5, 10 and 25 year statutes of limitation. Defendant filed a cross action in trespass to try title and a motion for summary judgment, alleging that the pleadings and affidavits on file showed there was no genuine issue as to any material fact and that defendant was entitled to judgment as a matter of law. Attached thereto was defendant's affidavit that his father, who was not the father of Mrs. Edwards, purchased an undivided one-half interest in the land and thereafter married the mother of both plaintiff and defendant and later, in 1897, purchased the other one-half interest; that his father died intestate in 1926, leaving surviving him as his heirs at law the defendant and the mother of plaintiff and defendant, and that, on March 2, 1926, their mother conveyed her interest in the land to defendant; that defendant then went into possession and has continuously since lived upon, used, cultivated and enjoyed it, maintained the improvements and the fences enclosing the land, paid all taxes as they became due and held peaceable, continuous and adverse possession thereof, claiming same under a regular chain of title duly recorded from the sovereignty of the soil and under said deed from his mother, which was promptly recorded in the county where the land lies, and, in good faith, had on numerous occasions sold portions thereof, and had openly and continuously exercised dominion over said land since March 2, 1926, and that plaintiff has not at any time since 1926 lived upon or occupied said land or any part thereof and has not exercised dominion over any part nor paid any taxes thereon.

Plaintiff answered defendant's motion for summary judgment by alleging that the following issues of fact had been raised: (A) Did defendant procure the execution of the deed by undue influence? (B) Did he procure execution thereof by representing to his mother that the deed conveyed part of the land to plaintiff? (C) Did defendant lead plaintiff to believe until 1955 that he recognized she had an interest in the land? Plaintiff alleged that from the affidavits attached a jury could find that defendant "procured" the deed and that defendant since the execution of the deed held said property as a co-tenant and not adversely to her and had not done anything which as a matter of law, would preclude plaintiff from having the deed cancelled. Plaintiff attached to her answer her affidavit that after the death of her step-father in 1926 the mother lived with plaintiff most of the time until 1934 and that from 1934 until her mother's death in 1938 the mother lived continuously with Mollie Edwards. "That on occasion her mother, Harriet E. Williams, told her that she, Harriet E. Williams, had

'fixed' her part of the land"; that plaintiff "understood" this to mean that her mother "had willed and/or deeded one-half of the property which she, Harriet E. Williams, owned to her—." Plaintiff further swore that since the death of her mother she, her family and neighbors were of the "opinion that she owned an interest in the land in question equal to one-half (of) what her mother, Harriet E. Williams, owned—"; that at all times Williams knew she had said opinion but did nothing "to contradict or refute that opinion"; that he "acquiesced in that opinion"; that plaintiff permitted defendant to work all the land; that she did not ask him to share any of the income or profits but she "expected" him to pay expenses and taxes; that she permitted her half-brother to farm the land and not account to her because her share was small; that she "anticipated" the property would go up in value because the community was becoming residential and she "anticipated to use her share of the land when it became ripe for residential purposes" and when they could sell it for residential purposes. She further stated that her mother could neither read nor write; that she was not experienced in business transactions and, on March 2, 1926, she "did not have the mental capacity to execute a deed." Plaintiff also attached the affidavit of her son, Robert Lee Edwards, that, in 1929, Harriet E. Williams told him Mollie Edwards was very good to her and would be repaid because she "had 'fixed' her part of the property;" that he, "took this to mean" that his grandmother had "deeded and/or willed one-half of the property which she owned to his mother;" that he, his mother and all the relatives and neighbors were of the "opinion" that one-half of the interest of Harriet E. Williams in the land had been "set aside" to Mollie Edwards; that Williams knew of this opinion but, until a few weeks before this suit was filed, did not "refute or do anything to show that he denied the claim" of Mollie Edwards; that at all times Williams "acquiesced" in the fact that Mollie Edwards owned one-half of the land her mother had owned. Plaintiff also attached the affidavit of Harry O. Andrews that, in 1927 or 1928, Harriet E. Williams told his mother she

"had 'fixed' the share of Mollie Edwards in the property she owned" and that he "understood" this to mean that she had "deeded and/or willed" one-half her interest in the property to Mollie Edwards; that all the relatives of Williams and Mollie Edwards and their neighbors were of the opinion, until 1955, that one-half of the land owned by Harriet E. Williams had been "deeded and/or willed" to Mollie Edwards; that Williams knew that was their opinion and did nothing "to contradict or disagree with this opinion"; that Harriet E. Williams lived for about twelve years after her husband died; that she died in 1938; that between 1926 and 1934 Harriet E. Williams spent more than one-half of her time living at the home of Mollie Edwards and during the last four years of her life she lived continuously in the home of Mollie Edwards and was supported by Mollie Edwards and her family. Plaintiff attached the affidavit of Jesse Edwards, who married a son of plaintiff, that "on several occasions after 1929 and prior to 1938 she heard Harriet E. Williams make statements to the effect that she had 'fixed' Mollie Edwards' part of the property; that she understood this to mean that Harriet E. Williams had deeded and/or willed one-half of her property to Mollie Edwards," and that it was common knowledge in the community that Mollie Edwards had a share in the property; that Williams knew of that opinion but did nothing to "refute any claim" Mollie Edwards made to the land. Plaintiff also attached the affidavit of James Porter Edwards "that at least four or five times during the period of time from about 1931 until about 1937, he heard his grandmother, Harriet E. Williams, make statements saying that his mother, Mollie Edwards, had a share of the land in question and that her share had been 'fixed'."

The court, upon consideration of said motion, pleadings and affidavits, sustained defendant's motion for summary judgment and rendered judgment for defendant. Mollie Edwards has appealed.

Appellant contends the court erred in granting defendant's motion for summary judgment because the record shows issues

of fact were raised as to whether (1) the deed was procured by fraud, undue influence or mistake; (2) the possession of Williams was adverse and (3) plaintiff's cause of action, if any, was barred by limitation.

Mrs. Edwards petition was based solely on an allegation that Williams procured the deed by undue influence. In connection with this sole asserted ground for cancellation it was alleged that when the deed was executed Mrs. Williams was elderly, unable to read or write and incapable of handling or knowing the consequences of business transactions and that after execution of said deed Mrs. Williams often made statements to the effect that part of the land had been conveyed to Mollie Edwards and that, until thirty days before this suit was filed in 1955, Williams "acquiesced in the knowledge" that Mollie Edwards owned a one-fourth interest in the land. In other words, the only ground alleged for cancellation was that the deed was procured by undue influence and the only apparent purpose for alleging that the grantor was elderly, unable to read or write and incapable of handling or knowing the consequences of business transactions was to show the grantor was susceptible to undue influence. Plaintiff did not allege insanity as a ground for cancellation. The evident purpose of plaintiff's allegation that Williams, by his acts and demeanor, "acquiesced in the knowledge" that plaintiff had an interest in the land was to anticipate a plea of limitation by defendant.

Texas Rules of Civil Procedure, rule 166–A(e) provides that affidavits in proceedings for summary judgment shall be made on personal knowledge, shall set forth facts admissible in a trial on the merits and shall show affirmatively that affiant is competent to testify to the matters stated therein. We are unable to find any evidence that Williams caused his mother to execute the deed by the use of undue influence or, stated differently, that he represented to her that the deed conveyed a part of the land to Mollie Edwards. Mrs. Edwards' affidavit in this respect states only that her mother told her that she had "'fixed' her part of the land". Can it reasonably be contended that this statement, if admissible, constitutes evidence that the son had exercised undue influence on his mother which caused her to execute the deed? Mrs. Edwards swears, in effect, that for about 29 years she "understood" this to mean that her mother had either "willed" or "deeded" one-half of her interest in the property to her. In other words, Mrs. Edwards concluded from what her mother said that she had either executed a deed or will whereby Mollie Edwards acquired, or would obtain, one-half of her mother's interest in the land. This is not evidence that the son exerted undue influence on his mother. Most of the matters referred to in affidavits attached to Mrs. Edwards' answer to defendant's motion for judgment do not state facts admissible in evidence, nor do they show affirmatively that the affiants are competent to testify to the matters stated therein. To illustrate, said affiants could not have testified to what they "understood" Mrs. Williams meant when she said she had "fixed" her part of the land, nor that the family and neighbors were of the "opinion" that Mrs. Edwards owned an interest in the land. With few exceptions, they do not contain statements of pertinent, material facts admissible in evidence relative to which they are shown to be competent to testify. Such exceptions do not state facts sufficient to raise an issue as to whether Fred B. Williams used undue influence to procure execution of the deed. A supporting affidavit must be made on personal knowledge and must set forth facts admissible in evidence and must show affirmatively that the affiant is competent to testify to the facts stated. R.C.P. 166–A (e); Sparkman v. McWhirter, Tex.Civ. App., 263 S.W.2d 832, 838 (Writ Ref.); Hunt v. Southern Materials Co., Tex.Civ. App., 240 S.W.2d 400 (Writ Ref.); Richards v. Smith, Tex.Civ.App., 239 S.W.2d 724 (R.N.R.E.); Fonville v. Southern Materials Co., Tex.Civ.App., 239 S.W.2d 885 (R.N.R.E.); McFarland v. Connally, Tex.Civ.App., 252 S.W.2d 486, 488; Statham v. City of Tyler, Tex.Civ.App., 257 S.W.2d 742, 745 (Writ Ref.); Marantz v. Weisberg, Tex.Civ.App., 33 S.W.2d 505,

509 (Writ Dis.). Most of the statements relate to opinions of non experts, hearsay, and matters which, if the facts were stated, would not be admissible over an objection that they relate to transactions with the deceased. Article 3716, Vernon's Ann.Civ. St. However, we do not mean to hold the affidavits were insufficient because some of them were not admissible under the "dead man's statute". Mrs. Edwards'·statement in her affidavit controverting defendant's motion for summary judgment that her mother "did not have the mental capacity to execute a deed" would not have been admissible in a trial on the merits and was not within the requirements of R.C.P. 166–A(e). This is a legal conclusion. No witness could so testify. Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 628, 36 L. R.A. 64; In re Hardwick's Estate, Tex. Civ.App., 278 S.W.2d 258, 261 (R.N.R.E.); 155 A.L.R. 284.

The statements in the affidavits attached to Mrs. Edwards' answer to defendant's motion for summary judgment relative to declaration of the grantor made long after execution, delivery and recording of the deed to defendant were not competent evidence of undue influence. Rankin v. Rankin, 105 Tex. 451, 151 S.W. 527, 530; Bonilla v. Lujan, Tex.Civ.App., 168 S.W.2d 691, 693 (R.W.M.); Bethel v. Yearwood, Tex.Civ.App., 142 S.W.2d 927, 931 (D.J.C.); Olés v. Traylor, Tex.Civ.App., 180 S.W.2d 511, 516 (Writ Ref.). The applicable rule relative to proof of undue influence is well stated by Judge Gallagher in Stewart v. Miller, Tex.Civ.App., 271 S.W. 311, 316 (Writ Ref.), as follows:

"Such issue is proved only when it is shown that such influence was exercised, and that it subverted and overpowered the will of the grantor and caused the execution of a conveyance which the grantor would not have executed but for such influence. Declarations of the grantor after the execution and delivery of a deed are not competent evidence to prove that such conveyance resulted from the exercise of undue influence upon such grantor."

It is undisputed that Mrs. Williams executed and delivered the deed to defendant on March 2, 1926. None of the affidavits even attempt to state any fact with reference to any act of defendant on that date or prior thereto that caused execution of the deed. They do state that after its execution Mrs. Williams made statements that·she had "fixed" the interest of Mollie Edwards. This is not evidence that defendant exercised undue influence on his mother and thereby improperly caused her to execute the deed. The affidavits of Mollie Edwards show that after the death of Mrs. Williams' husband, in 1926, Mrs. Williams spent most of her time with Mollie Edwards and during the four years preceding her death in 1938 lived all the time with her. In other words, they do not even show an opportunity for defendant to exercise undue influence on his mother. On the contrary, they show ample opportunity for Mrs. Edwards to learn all the facts concerning the deed, both before and after its execution, and, if they were sufficient to arouse suspicion, as we think they were, to require Mollie Edwards to then, in the exercise of reasonable diligence, make inquiry concerning the disposition of said land. The record discloses that such inquiry, properly pursued, would have disclosed that the mother had conveyed all her interest to her son. It is significant that Mrs. Edwards does not swear that she did not then know of the execution of the deed and its contents. No attempt is made to show who planned the deed, who wrote it or had it prepared, who paid for it, where it was signed and acknowledged and defendant's connection therewith, if any. The affidavits of the scrivener and notary are not attached, nor their absence explained.

Appellant's affidavits disclose that the deed was executed in 1926 and the grantor thereafter lived, until her death in 1938, most of the time with Mrs. Edwards. If the grantor did not know she had conveyed all her interest to her son in 1926, or if during the following twelve years the grantor at any time believed she had been defrauded and took any steps to question defendant's right or title to all the land no hint thereof is in this record. Williams'

affidavit shows that when he acquired his mother's interest in the land in 1926 the deed was promptly recorded; that he has lived on the land from 1926 until the present; used, cultivated and enjoyed it, paid all the taxes as they became due and that for twenty-nine years not one cent, as rent, profit, or otherwise, was paid to or requested by Mollie Edwards. If, as she says in her affidavit, soon after execution of the deed, her mother made statements that caused her to believe that her mother had conveyed her interest in the land by deed it would not be reasonable to believe that for 29 years Mrs. Edwards believed her mother had conveyed an interest in her land to her but, nevertheless, Mrs. Edwards failed to make any investigation to ascertain whether such a conveyance had been executed. If the statements of the mother caused Mrs. Edwards to believe that the land had been devised, or "willed", to her, then, certainly, at Mrs. Williams' death in 1938, the exercise of reasonable diligence would have required that she look for such a will and, failing to find it, make further investigation to ascertain what had become of her supposed interest in the land. It is highly significant that Mrs. Edwards does not claim she ever had any conversation with defendant wherein she asserted ownership of an interest in the land during the twenty-nine years that intervened between the execution, delivery and recording of the deed and filing of this suit. She contents herself by simply saying, after 29 years, that she "expects" at some time in the still distant future to claim her asserted interest in the land when, and if, it is sold for residential purposes. A fair consideration of the entire record compels the conclusion that the evidence was insufficient to raise an issue as to undue influence or limitation.

■ Mrs. Edwards did not have any interest in the land when the deed was executed. How did she acquire an interest? Where is the evidence that would support a finding that defendant told his mother that the deed conveyed some interest to Mollie Edwards? There is no showing that defendant had any connection with the deed before it was executed and delivered to him.

Does Mrs. Edwards claim as an heir? There is no proof of heirship. There is no evidence as to whether Mrs. Williams died testate or intestate, or, if testate, the provisions of her will. If she left a will it should have been probated not later than 1942. Mrs. Edwards does not attempt to show what property her mother owned when she died, if any, nor what disposition either she or the law made thereof. In any event, appellant could not recover without showing she has some interest in the land. 12 C.J.S., Cancellation of Instruments, § 45, p. 1015.

In Shofner v. Shofner, Tex.Civ.App., 105 S.W.2d 418, 420 (Writ Ref.), the court said "When the testimony offered by appellant is stripped of the declarations of the testator, which cannot be considered as original evidence to show undue influence, it amounts to nothing more than a showing of an opportunity to have exerted undue influence upon a testator." Here, even opportunity is not shown. The admissible evidence stated in appellant's affidavits, if presented in a trial on the merits, would not have prevented the court from instructing a verdict for defendant but would have required it. Arlington Heights Appliance Co. v. Gordon, Tex.Civ.App., 244 S.W.2d 337, 339.

In Boyer v. Pool, 154 Tex. 586, 280 S.W.2d 564, 565, there is a comparable fact situation. A will contestant obtained a jury finding that the will was the result of the exercise of undue influence. The trial court disregarded this finding and entered judgment sustaining the probate of the will on the ground that there was no evidence of undue influence. The judgment was affirmed by the Supreme Court. The testator was eighty-nine years old when he executed the will and ninety-three when he died. There was testimony that the testator told his grandchildren, the contestants, that he would provide for them. He did not. The contestants established a confidential relationship, opportunity and motive for undue influence, and that during his last years the testator was virtually dependent on his daughters, two of the principal beneficiaries. The Supreme Court said:

"Proof of this type simply sets the stage. Contestants must go forward and prove in some fashion that the will as written resulted from the daughters substituting their mind and will for that of the testator. Here the will and the circumstances raise suspicion, but it does not supply proof of the vital facts of undue influence—the substitution of a plan of testamentary disposition by another as the will of the testator." The court pointed out that the proof failed to show the circumstances under which the will was executed; that the record was silent as to who prepared the will; that if a certain lawyer wrote the will, as seemed to be assumed, he did not testify; that there was no testimony as to how the testator got in touch with said lawyer, who employed him and gave instructions as to provisions of the will, nor as to where the testator executed the will. The court stressed the fact that there was *no proof of the facts surrounding the planning and preparation of the will.* In the present case there is no evidence as to the preparation, planning, writing or delivery of the deed appellant seeks to cancel. There was no evidence as to who wrote the deed nor as to who gave the instructions as to its contents. The evidence that could possibly be pertinent to a *supposed issue of fact* on undue influence is weaker than in cases where our courts have sustained a directed verdict, a judgment notwithstanding the verdict, or a summary judgment. Curry v. Curry, Tex., 270 S.W.2d 208, was a suit to cancel a deed alleged to have been obtained by a son from his father by the exercise of undue influence. The trial court rendered judgment notwithstanding a finding of undue influence. The Supreme Court held there was no evidence of probative force to support a finding of undue influence. In that case the father, who was the grantor, was 85 years of age and had a broken hip. Years and the injury had a debilitating effect on him and there was proof that he made statements about a month after executing the deed that he had refused to sign papers that his son wanted him to sign. In that case the grantee selected, advised and paid the attorney who prepared the deed and arranged for the notary and witnesses. Nevertheless, it was held that there was no evidence of probative force that the deed was procured by undue influence. There was evidence that the grantee was trying to get the grantor to execute the deed; that the grantee said he did not want to sign it; that about a month after the execution of the deed the grantor told him that there had been people to the hospital with papers for him to sign but that he was not going to sign them. The court said that said statements of the grantor were not relevant to the question of exercise of undue influence, since it was made a month or more after the deed was executed. The court further said that the prompt recording of the deed, as in this case, rebutted, rather than supported, an inference that its execution was clouded with suspicion. See also Besteiro v. Besteiro, Tex.Com.App., 65 S.W.2d 759; Price v. Taliaferro, Tex.Civ.App., 254 S.W.2d 157, 163; Bledsoe v. Short, Tex.Civ.App., 264 S.W.2d 445, 447 (R.N.R.E.).

Relative to the trial court's decision that, as a matter of law, appellant's claim was barred by the statutes of limitation we call attention to Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319, 321, 137 A.L.R. 263, which was a suit to rescind a contract for the exchange of land and to cancel deeds executed in consummation thereof on the ground of fraud. The court said:

"The trial court submitted to the jury the issue as to when Sipper first learned that the minerals on the land conveyed to him by Sherman had been reserved. The jury answered, 'In 1935.' This finding by the jury is not sufficient ground, under the facts of this case, upon which to base a judgment in favor of Sipper. Before he is entitled to recover in this case, he must bring himself within the well-defined rules above stated, long established by the decisions of this court. This was not done. Furthermore, it is undisputed that the records were open to him for inspection, and there was nothing to prevent him or his attorney from discovering the misrepresentations made by Sherman; and by the exercise

of reasonable diligence he or his attorney could have discovered that the minerals had been reserved by the Leon & H. Blum Land Company in the land in controversy. Therefore the Sippers are charged in law with constructive notice of the actual knowledge they would have acquired if they had examined the records."

See also Carminati v. Fenoglio, Tex.Civ. App., 267 S.W.2d 449, 452 (R.N.R.E.); 137 A.L.R. 274; 12 C.J.S., Cancellation of Instruments, § 71, pp. 1060, 1066; 54 C.J.S., Limitations of Actions, § 377, pp. 513, 514; Boren v. Boren, 38 Tex.Civ.App. 139, 85 S.W. 48, 51; Kuhlman v. Baker, 50 Tex. 630 and Ryman v. Petruka, Tex.Civ.App., 166 S.W. 711, 712.

We have concluded that no issue of fact was raised. The judgment is affirmed.