### GUYER et ux. v. PRINCE et al.

#### No. 4758.

Court of Civil Appeals of Texas. Amarillo.

May 3, 1937.

Rehearing Denied June 21, 1937.

J. Shirley Cook, L. P. Bonner, and Storey, Storey & Donaghey, all of Vernon, for plaintiffs in error.

C. P. Engelking, of Electra, and T. R. Boone, of Wichita Falls, for defendants in error.

JACKSON, Justice.

All the heirs, except one, of John H. Guyer, deceased, hereinafter designated the Missouri parties, instituted suit in the district court of Wilbarger county, cause No. 5313, against their brother, J. C. Guyer, his wife, Emma B. Guyer, and E. B. Prince, as assignee of the banking commissioner of the state of Texas.

The Missouri parties sued their brother, J. C. Guyer, on a note made by him to John H. Guyer prior to his death, which, together with interest, they alleged, amounted to the sum of $15,000, and asked a foreclosure of their lien securing the payment thereof against all the defendants on certain real estate, among which was subdivision 122 of the Waggoner colony lands in Wilbarger county.

The pleadings of the defendants in said cause are not in this record, but since the judgment in the case became final, we assume they were sufficient to authorize the decree rendered on the trial, hence, it is unnecessary to set out all the tracts of land involved or the claims of J. C. Guyer and wife or the various debts and liens asserted by E. B. Prince, who acquired his rights by purchasing from the bank commissioner of the state of Texas the assets of the First National Bank of Electra.

Judgment was entered on March 25, 1933, and, in so far as is material to this appeal, adjudged that the Missouri parties had a first lien on subdivision 122 to secure the payment of the balance of their note, amounting to $6,399.94. It also decreed that the note sued on was the renewal of the original which had prior to the death of John H. Guyer been by him transferred and assigned to the First National Bank of Electra and that E. B. Prince as assignee of said bank was subrogated to said note and the lien on subdivision 122 securing the payment thereof. The lien was foreclosed as a first lien and the clerk directed, after the sale and disposition of certain other lands, to issue an order directing the sale of said subdivision and the application of the proceeds to the payment of any unpaid balance on the $6,399.94 to the lien securing the payment of which E. B. Prince had been subrogated, and the remainder, if any, paid to the Missouri parties.

On September 28, 1934, J. C. Guyer and wife, Emma B. Guyer, instituted this suit, cause No. 5980, in the district court of Wilbarger county against E. B. Prince and the sheriff of said county, J. D. Linton, to recover title of said subdivision 122, and, in addition to their count in trespass to try title, alleged that, at the institution of cause No. 5313 and while it was pending, a controversy existed between E. B. Prince and themselves as to whether he had a lien on said subdivision, which was their homestead, and as to certain credits, payments, and offsets they claimed on their indebtedness to the bank; that in cause 5313, the Missouri parties asserted a first lien on said land to secure the payment of the sum of $15,000, evidenced by the note given to John H. Guyer, deceased; that pending the preparation of the defense in said cause, and prior to the judgment therein, it was agreed between these plaintiffs, through their attorney and E. B. Prince and his attorney, that, as defendants in cause 5313, they would make a common fight against the Missouri parties, and the counsel for each would furnish to the other such information, evidence, correspondence, and advice as he had, to the end and for the purpose of defeating, so far as they could legally do so, the cause of action alleged by the Missouri parties; establish for E. B. Prince a lien on said subdivision, have such lien foreclosed, the land sold, bought in by Prince if it could be had for the amount of his judgment, and thereafter he should reconvey to the plaintiffs subdivision 122 for a consideration not exceeding $2,500; that they fully complied with such agreement, made common cause with E. B. Prince, furnished him and his counsel all information, evidence, correspondence, and documents in their possession for the purpose of defeating, so far as they could legally do so, the cause of action alleged by the Missouri parties, and, as a consequence, E. B. Prince was decreed, in effect, a first and superior lien on said land; that on the first Tuesday in March, 1934, said subdivision was sold and conveyed by the sheriff, J. D. Linton, to E. B. Prince for the sum of $2,000; that these plaintiffs have at all times been ready, willing, and able to purchase said subdivision and to pay therefor $2,500, and, on numerous occasions, have demanded that E. B. Prince convey said property to them for such consideration, but he has renounced and repudiated and failed and refused to perform his

agreement; has demanded possession of them, and, on their refusal, has demanded of J. D. Linton that he forthwith execute the writ placing him in possession of the property, and, unless restrained, the sheriff will dispossess these plaintiffs and place E. B. Prince in possession of said premises.

The defendants answered by numerous demurrers, general and special denials; pleaded not guilty, that the asserted contract was in violation of the law and against public policy, against the statute of fraud, and without consideration. By way of cross-action, E. B. Prince asked that the plaintiffs be dispossessed and that he be placed in possession of the property and recover his cost.

In obedience to a peremptory instruction, the jury found for the defendants; judgment was rendered that plaintiffs take nothing by their suit and that E. B. Prince be placed in possession of the land, from which decree the plaintiffs, herein designated appellants, by writ of error, prosecuted this appeal and filed the record in this court on July 15, 1936.

Before considering the case on the merits, we are confronted with a motion filed in this court on September 28, 1936, by the defendants in error, herein called appellees, to have the judgment of the trial court affirmed on certificate. This motion was overruled on November 2, 1936, and on January 11, 1937, a motion for a rehearing on the motion to affirm on certificate was overruled.

On February 13th, thereafter, the appellees filed their petition with the Supreme Court for a writ of error, seeking a revision and correction of the judgment of this court overruling their motion to affirm the case on certificate.

In passing upon the application, the Supreme Court said: "It would appear from the showing made in the application that the judgment of the Court of Civil Appeals is in conflict with the recent decision of this court in Jarrell et al. v. Farmers' & Merchants' State Bond Bank of Poth, Texas, 99 S.W.(2d) 281." Prince v. Guyer, 103 S.W.(2d) 128.

The application was dismissed for want of jurisdiction, because the order appealed from was interlocutory.

On April 20, 1937, the appellees filed their second motion in this court for a rehearing of their motion to affirm on certificate. Owing to their insistence on the motion to affirm on certificate, we deem it proper to state the facts revealed in the record on which our former judgment was based in refusing an affirmance of the case on certificate.

The judgment in the trial court was filed January 22, 1935, from which the plaintiffs prosecuted an appeal to this court by writ of error. The defendants filed their motion asking that the judgment, of the lower court be affirmed on certificate. Thereafter, the plaintiffs, by proper motion, asked the court to dismiss the motion to affirm on certificate because the transcript affirmatively disclosed that no final judgment had been rendered in the trial court. This motion was sustained, and the case and the application to affirm on certificate were dismissed. Thereafter, the defendants filed a motion in the trial court to have judgment entered nunc pro tunc, the motion was granted on November 16, 1935, and, in obedience thereto, a final judgment was entered on that date nunc pro tunc.

On January 23, 1936, the plaintiffs filed their petition and writ of error bond with the clerk of the district court, and on February 3d, citations in error were issued, one served on J. D. Linton on the same day, the other served on E. B. Prince on February 11, 1936. These citations commanded J. D. Linton and E. B. Prince, "To be and appear before our District Court of the State of Texas at the March term, 1936, of said court to be holden in the City of Vernon, County of Wilbarger, State of Texas, within sixty days from date of the service of this citation."

These citations in error were a nullity, since Article 2260, among other things, provides that the clerk shall issue the citation properly styled and dated, "Directed to the sheriff or any constable of the county where the defendant is alleged to reside or be, and shall command him forthwith to summon the defendant to appear and defend such writ before the Court of Civil Appeals within sixty days from date of service of said citation, stating the place of holding the same, according to the provisions of the law regulating the returns of appeals and writs of error from the court in which the judgment was rendered."

On May 13, 1936, the plaintiffs filed another petition with another writ of error bond, and on May 19, 1936, citations in error were again issued, one served on J. D. Linton on May 21, and the other on E. B. Prince on May 22, thereafter. These cita-

tions in error were also void because they commanded that the defendants in error, "Be and appear before our Court of Civil Appeals of the Forty-sixth Supreme Judicial District of the State of Texas at the June term, 1936 of said Court to be holden in the City of Vernon, County of Wilbarger, and State of Texas within sixty days of the date of service of this citation, etc."

It is not claimed that the plaintiffs in error, whom we designate as appellants, failed to exercise reasonable diligence to secure the issuance and service of citations in error. They filed their last petition on May 13, 1936; after entry of the judgment nunc pro tunc on November 16, 1936, citations in error were promptly issued and served, but since they were fatally defective, the appeal was not perfected.

Article 1839, as amended (Vernon's Ann.Civ.St. art. 1839) provides in part that, "In appeal or Writ of Error the appellant or plaintiff in error shall file the transcript with the Clerk of the Court of Civil Appeals within sixty days from the final judgment or order overruling motion for new trial, or service of the writ of error."

This provision is for the benefit of the defendant in error and, unless a sufficient citation in error is served and properly returned, or the requirement is satisfied by waiver, intentional or otherwise, the appeal is not perfected. Borger v. Morrow, 125 Tex. 321, 82 S.W.(2d) 944; Moody-Seagraves Ranch, Inc., v. Brown et al. (Tex.Civ.App.) 59 S.W.(2d) 431; Felton et al. v. Seeligson (Tex.Com.App.) 265 S.W. 140.

The facts correctly stated do not, in our opinion, disclose any conflict with the holding of this court in refusing to affirm on certificate and the holding of the Supreme Court in Jarrell et al. v. Farmers' & Merchants' State Bond Bank, supra, and we, therefore, again overrule appellees' motion to affirm on certificate.

This court is without jurisdiction to affirm on certificate unless defendant in error shows he has been served with citation in error or waived such service, 3 Tex. Jur. p. 741, par. 531, but the motion to affirm on certificate was, we believe, a general appearance and constituted a waiver of such service and the appeal was thereby perfected. 3 Tex.Jur. p. 363, par. 257.

The appellants complain of the action of the court in directing a verdict against them, since the testimony, they say, was sufficient to require the submission to the jury of whether the contract as alleged by them was made with the authority of E. B. Prince, or in any event, whether he accepted, with knowledge thereof, the benefits of such contract. The appellants did not plead waiver, estoppel, or ratification. 10 Tex.Jur. p. 508, par. 295; McKay v. McKay (Tex.Civ.App.) 189 S.W. 520.

We have carefully examined the statement of facts and have concluded that the testimony tended to show the making of the contract alleged, but that the testimony is entirely insufficient to show that E. B. Prince was a party thereto or had authorized his attorney to enter into such contract for him.

We think, however, for another reason that there was no fact issue to be submitted to or determined by the jury.

The contract sued upon by appellants, according to the uncontroverted testimony, was made between the attorney for appellees, C. P. Engelking, and the attorney for appellants, J. A. Storey. The terms thereof were in effect that appellants would assist E. B. Prince and his attorney in cause No. 5313, furnish them data, information, and evidence, in order that E. B. Prince might establish a superior lien on the land involved, purchase the same under execution sale, and, as a consideration for such assistance, the appellants should have the right to purchase from E. B. Prince subdivision No. 122 for a consideration not to exceed $2,500; that, in compliance with said agreement, the appellants furnished data, evidence, and information, testified in court, and did everything possible to assist in the lawsuit; that, pursuant to such agreement, they waived as against Prince their homestead rights, all pleas of limitation, all credits to which they were entitled upon the purchase price of the property, relying upon the agreement that they would obtain the property from E. B. Prince for not exceeding $2,500.

In Bowling v. Blum et al. (Tex.Civ. App.) 52 S.W. 97, 98 (writ ref.), an action was brought by Bowling to cancel a certain judgment rendered against him in favor of the Blums in the district court of Rusk county on August 7, 1889. This judgment was for a sum of money and the foreclosure of a lien on certain land. At the time this judgment was rendered, there was another suit pending in the same court against Bowling, involving the same land,

brought by Rebecca Allaway against Bowling, in which Hyman Blum was intervener.

"On October 14, 1889, the attorney of Leon & H. Blum and said Bowling entered into an agreement in reference thereto as follows:

"Blum v. Bowling. In this case it is agreed between Gaius M. Bowling and W. C. Buford, Atty. for Blums, that after the Attaway suit is settled, if settled in favor of Blum, then Blum will deed to Bowling a tract of land across the creek, about eight acres, and release the balance of judgment against Bowling, and Bowling is to assist Blum in the Attaway suit. In the event Blum should refuse to consent to this agreement, then we agree that this judgment shall be set aside in the above case, and parties placed in statu quo."

The court says: "It appears that on July 23, 1892, a judgment was rendered in the Attaway suit in favor of Blum, which was affirmed by the court of civil appeals. In the trial of said suit Bowling gave testimony favorable to Blum. No objection is conceived to the validity of said agreement except for the undertaking of Bowling to assist Blum therein, or, according to the finding of the jury, to furnish testimony favorable to Blum therein. Outside of this agreement, the arrangement was perfectly legitimate. This feature, it seems to us, brought the agreement within the condemnation of the law declared by a line of cases, on the ground that its tendency was to pervert the administration of justice. It is fair to suppose, from the nature of the Attaway suit as disclosed by the record, that the expectation or probability was that Bowling's testimony in the suit, or evidence that he possessed, would be adverse to Blum (or useful to Attaway), else why this stipulation? The contract was against public policy, by reason of this feature. Ridenbaugh v. Young, [145 Mo. 274] 46 S.W. 959, and cases cited; Beach, Mod. Cont. § 1534, note. We therefore are of opinion that the contract of October 14, 1889, was void."

The contract, according to the undisputed testimony, tended to prevent the administration of justice, was contrary to public policy, unenforceable, and void.

"An unlawful contract cannot form the basis of any enforceable legal or equitable rights, or impose any legal obligations upon the parties to it.

"As a general rule a court will not aid in the enforcement of an illegal contract at the instance of any of the parties thereto where they are in pari delicto, but will leave the parties to the agreement where it finds them. * * *

"Pursuant to the foregoing rule, the courts will not compel specific performance of an illegal contract, nor will it aid a party to recover possession of property to which he is entitled thereunder." 10 Tex. Jur. p. 233, par. 136.

The appellants were not entitled to recover on the contract disclosed by the testimony, hence, the court correctly directed a verdict against them, and the judgment is affirmed as to them.