FREEMAN BEEMER, Appellant, *vs.* ADDIE M. BEEMER *et al.* Appellees.

*Opinion filed December 17, 1912.*

1. WILLS—*when a verdict finding testator was of sound mind will be sustained.* Where the Supreme Court reverses a decree in a contested will case upon the ground the evidence does not show that the testator was of unsound mind, as found by the verdict, a decree entered upon the second trial finding that the testator was of sound mind will be sustained, where the only additional evidence offered on the part of the contestant is of the same character and is no more conclusive than the testimony at the first trial.

2. SAME—*what is necessary in absence of direct proof of undue influence.* In the absence of direct or positive proof of undue influence there must be evidence of such facts that the inference of the existence of undue influence may be naturally and reasonably drawn therefrom.

3. SAME—*what does not require submission of issue of undue influence to jury.* Testimony of a witness that he saw the testator's wife and son, both of whom were substantial beneficiaries of the will, in company with the testator at the office of the lawyer who drew the will, on the day the will was executed, does not require the issue of undue influence by them to be submitted to the jury, where there is no proof tending to show that they influenced the making of the will or exercised any control over the testator in the management of his affairs and property. .

4. INSTRUCTIONS—*when refusal of a correct instruction will not reverse.* Refusal of a correct instruction asked by the defeated party in a will contest case will not justify a reversal of the decree where the substance of the refused instruction is contained in another instruction given at his request, even though the latter is not so explicit as the refused instruction.

APPEAL from the Circuit Court of Lee county; the Hon. RICHARD S. FARRAND, Judge, presiding.

WILLIAM H. WINN, and BROOKS & BROOKS, for appellant.

C. F. PRESTON, and A. H. HANNEKEN, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant filed a bill in the circuit court of Lee county to contest the will of his father, Henry Beemer. The grounds upon which the bill asked that the will be set aside were unsoundness of mind of the testator and that he was unduly influenced to make the will by his wife, Addie M. Beemer, and his son Lee Beemer. The case has been tried twice. At the first trial the court took from the consideration of the jury the issue of undue influence, and the jury found the testator was of unsound mind when the will was executed and that it was not his will. From a decree entered in conformity with the verdict an appeal was prosecuted to this court, where the decree was reversed on the ground that it was contrary to the evidence. (*Beemer v. Beemer,* 252 Ill. 452.) Reference is made to the opin-

ion then filed for a statement of the case. At the second trial the court again took from the consideration of the jury the issue of undue influence and submitted the case upon the issue as to the soundness of mind of the testator. The jury found he was of sound mind at the time of making the purported will and that it was his will. The court entered a decree in conformity with the verdict, and contestant has prosecuted this appeal to reverse that decree.

It is insisted by appellant the finding that the testator was of sound mind was contrary to the evidence and the decree should be reversed upon that ground. When the case was before us the first time we considered the evidence then in the record and set out in substance the testimony of the witnesses in the opinion then filed. At the second trial the same witnesses were again called by appellant and testified to substantially the same facts. Nine witnesses were called and testified on behalf of appellant at the second trial who did not testify on the first trial, and it is now claimed the decided preponderance of the evidence in this record shows that at the time the will was executed the testator was of unsound mind. In the main the testimony of the additional witnesses as to the condition of the testator's mind was of the same character and no more conclusive than the testimony of the witnesses on the first trial. It is claimed that in addition to what was proven on the first trial it was proven on the second trial that appellant came from his home in Iowa to his father's house in September, 1909, and his father did not recognize him until told who he was; that at or about the time the will was executed the testator failed to recognize other relatives, and that on the day the will was made he became confused as to locations on the streets of Pawpaw. An examination of the testimony on these points discloses that its value is too inconsequential to overcome the testimony in support of the contention that Henry Beemer did possess testamentary capacity at the time he made the will.

Thirty-two witnesses testified for appellees, most of them being the same witnesses who testified on the first trial, and their testimony was substantially the same both times. The substance of it will be found in the opinion filed in the case when it was first before us. The evidence on both sides was pretty fully set out in that opinion, and it is unnecessary to refer to it further than to say that the evidence on the part of the appellant did not preponderate in favor of the contention that Beemer was of unsound mind when the will was executed. In our opinion the finding of the jury and the decree upon that question were warranted by the proof.

It is next contended that the court committed reversible error in refusing to submit to the jury whether the will was procured by undue influence. This contention is based principally upon the claim of appellant that the evidence shows testator's wife and his son Lee Beemer, the latter the principal and the former a substantial beneficiary under the will, were present in the office of the lawyer, C. F. Preston, when the will was drawn. There was no testimony (unless it be that of the witness Osborne, hereafter referred to,) that either of said parties spoke of, advised or solicited the making of the will. Henry Beemer realized that he was afflicted with an incurable malady and that his death must occur in the near future. A day or two before the will was executed, July 28, 1909, he made arrangements with M. F. Beemer, a cousin, who resided near him on an adjoining farm, to take him to Pawpaw. Lawyer Preston, who drew the will, had his office in that town. M. F. Beemer was a witness for appellant. He testified that a day or two before July 28 Henry Beemer asked him to take him to Pawpaw on that day and he agreed to do so. On the morning of July 28 he, his wife and his son Alvin drove in an automobile to Henry Beemer's house about seven or eight o'clock. The witness' wife occupied a front seat by his side and his son sat in the rear seat.

When they arrived at Henry Beemer's home Beemer asked the witness if his wife could go with them, and on being told she could, she came out of the house and went with the party to town, she and Henry Beemer sitting in the rear seat with Alvin, the witness' son. It does not appear that Henry Beemer stated to his cousin, when he asked him to take him to town, why he wanted to go, nor was the subject of making a will mentioned on the way to town. When they arrived at Pawpaw and left the automobile Henry Beemer told the witness he was going to lawyer Preston's office and could be found there when the witness wanted him. The witness did not see him again until between eleven and twelve o'clock, when he wished to return home. He then went to Preston's office. Preston came out and said that there were some things Beemer could not make up his mind about. Beemer then came out and told the witness he could go on back home and he would wait until his son Lee came and would go home with him. We do not understand from the witness' testimony that he was inside Preston's office. He saw no one but Preston and Henry Beemer. Whether Mrs. Beemer was there, or what became of her after her arrival at Pawpaw until she left to return home, is not disclosed. She did not wait to go back home with her husband but returned with the witness, M. F. Beemer. Whether she was in Preston's office at any time while the will was being prepared the witness did not state.

Alvin Beemer, son of the witness M. F. Beemer, testified that he, his father and Henry Beemer's wife returned home together in the automobile; that they started a little before noon, and that he thought Henry Beemer came to the automobile just before they started and said his son would come after him. Catherine Beemer, wife of M. F. Beemer, a witness for appellant, testified Lee Beemer was at home when she and her husband and son called for Henry Beemer the morning of July 28. About two o'clock .

in the afternoon she saw Lee and his father driving out
of town in a buggy. J. C. Miller testified for appellant
that he went to the office of Preston about eleven o'clock,
or a little later, July 28; that Henry Beemer, his wife and
son Lee were there, and he heard something said about
Texas land and Mrs. Bradley. Harvey Osborne, who had
known Henry Beemer, testified to meeting him in Pawpaw
in July, 1909; that Henry Beemer complained of his seri-
ous and distressing condition, and the witness inquired of
him why he was in town and told him he should be at
home. Beemer replied that he would be at home but his
boy wanted him to come to town and get his will fixed up.
This statement was stricken out on motion of appellees.
Henry Beemer himself requested the parties who signed
the will as witnesses to go to Preston's office for that pur-
pose. He went alone to procure them. He went to a bank
for one and met another one on the street. One of the
witnesses to the will was dead at the time of the trial.

The foregoing is, we believe, a fair statement of all
the evidence relied upon in support of the charge that Ad-
die Beemer and Lee Beemer procured the will to be made
by undue influence. We shall not prolong the discussion
by commenting upon the apparent conflicts in and improb-
abilities of the correctness of some of the testimony. Up-
on the motion to direct the verdict upon the question of
undue influence the questions of the weight and preponder-
ance of the evidence and the credibility of the witnesses
could not be considered. The question for consideration
was whether the evidence fairly tended to prove the charge,
and in the absence of other evidence to the contrary could
the jury, acting reasonably, have found that the proof sus-
tained the charge? We are of opinion the answer must
be in the negative. There is absolutely nothing in all the
testimony, outside of the statement by Miller that Addie
and Lee Beemer were in Preston's office when he was
drawing the will, and the statement of Osborne (which

was stricken out) that Henry Beemer said his son wanted him to come to town and get his will fixed up, that would even raise a suspicion that he was induced to make the will by his wife and son, or either of them. It is clear that the presence of Mrs. Beemer and Lee when the will was executed was not a part of the plan arranged for. Even if Mrs. Beemer was present a part of the time, she was not present until the will was executed, and it does not appear to have been originally contemplated that she should accompany her husband to town on that occasion. Lee Beemer did not go with his father and appears not to have intended visiting Pawpaw that day, but went to bring his father home when M. F. Beemer returned without him. In the absence of any direct or positive proof of undue influence there must be evidence of such facts that the inference of the existence of undue influence may be naturally and reasonably drawn from them. (*Dowie* v. *Sutton,* 227 Ill. 183; *Bowles* v. *Bryan,* 254 id. 148.) If there had been any proof of facts showing Mrs. Beemer and Lee had used their influence to persuade Henry Beemer to make the will, then there would be force in appellant's position that their presence while it was being prepared, together with the fact that they were large beneficiaries, tended to prove undue influence. There is no proof that either the wife or the son exercised any control over Henry Beemer in the management of his affairs and property. The question of undue influence that will avoid a will, and of evidence tending to show the exercise of undue influence, has been discussed in many cases decided by this court. One of the latest cases on this subject is *Bowles* v. *Bryan, supra.* Under the authority of that and previous cases decided by this court, the trial court did not err in taking the issue of undue influence from the jury.

Appellant was not injured by striking out the statement of Osborne above referred to. It was not competent upon the issue of undue influence, and if it was competent for

the purpose of showing the mental condition of the testator, it was of so slight importance that if it had been allowed to remain in the record it could have been of no benefit to appellant.

It is further insisted that the court committed reversible error in refusing appellant's third instruction, which reads as follows:

"You are instructed that where a person of sound mind is not subject to restraint or undue influence he may dispose of his property by will as he sees fit, but where want of testamentary capacity is charged, as it is in this case, all of the surrounding facts, including the bequests themselves, their propriety or impropriety, their reasonableness or unreasonableness, in view of the situation, relations and circumstances of the testator, may be considered, in connection with all the other evidence in this case, in determining whether the testator was, at the time of the execution of the alleged will, of sound mind and memory."

This instruction was given upon the former trial of this case and was held good by this court on the former appeal, but its material features were covered by another instruction given for appellant at the second trial. In his first given instruction the jury were told that while inequality in the disposition of property is not, of itself, evidence of unsoundness of mind, it might be considered as a circumstance, together with all other facts and circumstances shown by the evidence bearing upon the question of the soundness or unsoundness of mind of the testator at the time the will was made. While this instruction is perhaps not so explicit as the refused instruction, it fairly covered the points contained in the refused instruction. We would not be justified in reversing the decree for the refusal to give the third instruction.

The decree is affirmed.                *Decree affirmed.*