**BETHEL et ux. v. YEARWOOD et al.**

**No. 5181.**

Court of Civil Appeals of Texas. Amarillo.
June 24, 1940.

Rehearing Denied Sept. 3, 1940.

Williams & Bell, of Childress, for appellants.

J. Farris Fish, of Matador, for appellees.

STOKES, Justice.

This is an appeal from a judgment of the district court declaring null and void the last will and testament of Mrs. M. E. Cooper, deceased, and denying the application of appellant, Ray Bethel, to probate the same. D. H. Cooper and his wife, Mrs. M. E. Cooper, owned a section of land consisting of 640 acres located in Motley County. D. H. Cooper died intestate on the 22nd of May, 1938, and his wife, Mrs. M. E. Coop-

er, died on the 15th of December, 1938, leaving as her last will and testament the instrument involved in this suit. Appellant, Ray Bethel, is a grandson of the decedents, his mother, who was their daughter, having preceded her parents in death, and the appellees, Mrs. Rosa Yearwood and Mrs. M. M. Barton, are the surviving children, the other appellees being grandchildren, the parents of such grandchildren having died prior to the death of D. H. Cooper and his wife. The record shows that Mrs. Yearwood and her husband, B. F. Yearwood, are residents of Hale County, and Mrs. Barton and her husband are residents of Donley County. D. H. Cooper and his wife occupied the section of land in Motley County as a homestead many years prior to their death, and at intervals during a number of years prior to their death, the appellant, Ray Bethel, with his family, occupied and cultivated a portion of the section of land as a tenant of his grandfather, D. H. Cooper. A few days after the death of D. H. Cooper, appellant, with his wife and two children, moved into the Cooper home and thereafter occupied it with the grandmother who was at that time seventy-nine years of age. He was appointed administrator of the estate of his deceased grandfather and continued to cultivate a portion of the land and assist his grandmother in managing the affairs of the farm.

On or about the 26th of October, 1938, Mrs. Cooper executed the last will and testament in question in which she bequeathed to appellant, Ray Bethel, all of her property of every kind and character, whether real or personal, and wherever situated, stating in the will that the property which she owned consisted of her undivided one-half interest in the community estate of D. H. Cooper, deceased, and herself. She also appointed appellant as sole executor of the will and directed that he be not required to give bond as such. Within a few days after his grandmother's death, appellant filed the will in the county court, together with his application to probate the same, and immediately a controversy arose between appellant, Ray Bethel, and some of the other heirs over the question of its validity. As a result of the controversy, a written contract was made and signed by Bethel and Mrs. Yearwood, Mrs. Barton and Geo. H. Gilley, another grandson, which provided that the will should be cancelled, held for naught, and thereafter be null and void and of no force or effect and

appellant agreed to dismiss his application to probate the same. The contract further provided that all of the estate of Mrs. M. E. Cooper, deceased, should pass and descend in accordance with the laws of descent and distribution of the State of Texas.

The contract was entered into in the office of the attorney for appellees, appellant being present in person and also accompanied by his counsel, and it was understood between all of them that the application to probate the will would at once be dismissed. Appellant's counsel overlooked the matter of dismissing the application for some ten days or two weeks, but immediately after he did so and had returned to his office, appellant came to his attorney's office and informed the latter that he had decided to pursue the application and desired that it be not dismissed. His counsel thereupon declined further to represent appellant and he procured other counsel to represent him in the matter. Thereafter appellees filed the contest which constitutes the substance of the case now before us and in which they alleged that the testatrix, Mrs. M. E. Cooper, did not have sufficient mental capacity to know and understand the effect of the will at the time she executed the same, and that it was signed and executed by her only because of undue influence exerted upon her by appellant. They alleged that appellant lived in the same house with the testatrix; that he pampered her and had misappropriated money and property belonging to the estate of D. H. Cooper, of which he was administrator, for the purpose of influencing and pleasing her so that she would make her last will and testament in accordance with his desire. They alleged that at the time of executing the will Mrs. Cooper was decrepit and infirm, both in mind and in body; that she knew practically nothing about handling business affairs; that she did not know the effect of the instrument executed by her, but had executed the same solely because of undue influence exerted upon her by appellant at the time of and immediately preceding its execution, and that she would not have executed the will but for the undue influence exerted upon her by appellant. Appellees further contested the application upon the ground, as alleged by them, that the contract mentioned above had been executed by appellant and some of the heirs and prayed that the application to probate the will be denied; that the will be declared

null and void, and for costs and general relief.

Appellant answered the contest by general and special exceptions, general denial, and other allegations not necessary to detail here.

Eula Bethel, the wife of Ray Bethel, filed a plea of intervention in the case, alleging that she was interested in the subject matter and a necessary party thereto because she was the wife of Ray Bethel and was such on the date of the death of Mrs. M. E. Cooper, and that long prior to Mrs. Cooper's death, and at all intervening times, she and her husband and children resided, and still resided, upon the west portion of the section of land involved, and that by reason of the will and the death of Mrs. M. E. Cooper and her relationship as the wife of the beneficiary, Ray Bethel, and their residence upon the land, she had acquired a homestead right and interest therein and that it was necessary that the will of Mrs. M. E. Cooper be admitted to probate as a muniment of title to the intervenor's homestead. She alleged that she did not sign the contract of settlement asserted by appellees and had in no manner waived her homestead interest in the land. She also adopted all of the pleadings of her husband, Ray Bethel, which had been, or thereafter should be, filed in the case.

Due proof of the execution of the will was made by one of the witnesses thereto and the allegations of appellees concerning the mental incapacity of the testatrix to execute the will were waived, the case being submitted to the jury upon a single special issue concerning the allegations of undue influence. In answer to the special issue the jury found, in effect, that the making and execution of the instrument by the testatrix was procured by undue influence on the part of the proponent, Ray Bethel. Based upon the verdict of the jury the court rendered judgment denying the application to probate the instrument as the last will and testament of Mrs. M. E. Cooper, and adjudging the same to be void and of no force or effect.

Appellants filed a motion for a new trial, which was overruled, to which they duly excepted and gave notice of appeal and have perfected their appeal to this court.

Appellants contend the judgment should be reversed: First, because of the erroneous admission of the testimony of his former attorney, G. E. Hamilton, and denying the admission of his own testimony in regard to matters which will be revealed in our discussion of that contention; secondly, because of the erroneous admission of the testimony of a neighbor and his wife concerning statements made by the testatrix prior to executing the will, and, thirdly, because the verdict of the jury and judgment of the court are not supported by legal and competent evidence.

The record shows that, after appellant had agreed with some of the other heirs of Mrs. Cooper upon a settlement of the controversy, but before the contract was signed, appellant, Ray Bethel, went to his attorney, G. E. Hamilton, who had represented him in the administration of the estate of his deceased grandfather, and told Mr. Hamilton that the other heirs were claiming the will was not valid because it did not show the date upon which it was executed. Hamilton had drawn the will for Mrs. Cooper and he said he examined his office copy and ascertained the date had been omitted but that he advised appellant that the failure to enter the date upon the will did not affect its validity in any manner whatsoever. This portion of Hamilton's testimony was admissible because appellant was contending that he signed the contract of settlement because of the fraudulent representations made to him by the appellees to the effect that the failure to insert the date upon which the will was executed rendered the will null and void. Hamilton further testified, however, that, either in the same conversation or upon another occasion at about the same time, appellant asked him if he thought appellant would be able to probate the will in the face of the opposition appellees were expected to present. In answer to this question he said he told appellant that, before employing counsel and pursuing further his effort to probate the will, appellant should take into consideration the opposition appellees would make thereto; that he should further consider the fact that Mrs. Cooper had disinherited all of her other heirs, which would be one factor the court would take into consideration in determining whether or not Mrs. Cooper was possessed of mental capacity to make a will, and that he gave appellant such advice as would prevent him from being misled by any false opposition. He said he also told appellant that he may expect to have to spend some money in the effort, since the witness could not be expected to represent appellant in that matter for the

same fee which appellant had paid him for his services in the administration of the estate of D. H. Cooper. Appellees contend this testimony was admissible upon the question of fraud that had been injected into the case by appellant, which consisted of his allegations that he had signed the contract of settlement only because of the fraudulent representation made to him by appellees to the effect that the will was null and void because of the absence from it of the date upon which it was executed. The testimony of Hamilton first quoted above was admissible upon that question. It showed that appellant had consulted his own attorney with reference to the effect of the absence of a date upon the will, but the testimony last detailed was clearly inadmissible for that or any other purpose. Moreover, we think it was prejudicial to appellant. It informed the jury very clearly as to the opinion of the attorney with reference to the propriety of appellant's insistence upon probating the will and indicated very definitely that, in his opinion, it was unfair and should not be allowed to stand. Hamilton was a practicing attorney and resided at Matador in Motley County. He had drawn the will for the testatrix and had represented appellant in the administration of the estate of his deceased grandfather. He was no doubt well known in the community and his opinion as to the nature of the will and the propriety of appellant's insistence upon probating it no doubt had great weight with the jury. Furthermore, it did not refer to any controverted issue in the case and was wholly immaterial. Appellant's assignments of error in reference to this action of the court are sustained.

■ The second phase of this contention presented by the brief relates to the testimony of appellant, Ray Bethel. While he was being cross-examined by counsel for appellees he was asked if, after his grandfather's death, he had talked with Mrs. Cooper, the testatrix, about making a will. Appellant answered that he had never mentioned it to her, and counsel then asked him if Mrs. Cooper ever talked with him about it. To this question he answered that she had and stated that she asked him if, in his opinion, she could make a will. In answer to further questions of counsel for appellees, he said he did not remember the date the conversation took place but it was about two or three weeks before she executed the will. Counsel then asked the wit-

ness if that was the first time he had talked with her about it and the witness answered in the affirmative. Upon redirect examination by his own counsel appellant was requested to state what the conversation was, to which he answered that Mrs. Cooper had asked him if, in his opinion, she could make a will and he told her he did not know but he had an idea she could; that he thought anybody could will anything they had to whomsoever they pleased. He said that his grandmother seemed to be in doubt as to whether or not she could make a will because her husband was dead and that appellant suggested to her that she advise with an attorney about it the next time she went to town. He said that the next time they went to Matador his grandmother requested him to see Judge Hamilton and ascertain from him whether or not she could make a will. He said he asked Judge Hamilton about it and was informed that she could do so. The witness further testified that the information was satisfactory to her but that he did not suppose she was ready at that time to make a will or, at any rate, she did not do so until some two weeks thereafter. At this point counsel for appellees objected to the testimony upon the ground that it was inhibited by the provisions of Art. 3716, R.C.S. 1925, commonly known as the "Dead Man Statute". The objection was sustained by the court and the testimony ruled out. Appellant assigns as error the action of the court in sustaining the objection and insists that appellant was entitled to detail the conversation and explain the circumstances surrounding the same since he had been called to testify about it by the opposite party. We think the assignment must be sustained. Appellees' counsel had brought out the fact that appellant had talked with his grandmother concerning the will and, under the provisions of the statute, he had the right to do so. Having done so, however, he opened the matter in such a way as that appellant's own counsel had the right to bring out the details of the conversation referred to and explain or qualify the same in any manner which was justified by the facts and which he deemed necessary. Reyes v. Escalera, Tex.Civ.App., 131 S.W. 627; Walkup v. Stone, Tex.Civ.App., 73 S.W.2d 912; Adam v. Adam, Tex.Civ.App., 127 S.W.2d 1001; Allen v. Pollard, 109 Tex. 536, 212 S.W. 468.

The second contention presented by appellants relates to the admission by the

court of the testimony of Mrs. Henry Rollins and her husband, Henry Rollins, concerning statements that were made to them by the testatrix, Mrs. M. E. Cooper, before she executed the will in controversy. Mrs. Rollins testified that around the 10th or 15th of October, 1938, which was some ten or fifteen days before the will was executed, she went over to Mrs. Cooper's house one Sunday afternoon to ascertain if Mrs. Cooper could return with her to her home and enjoy some ice cream. She said that she found Mrs. Cooper crying and asked her what was wrong; that Mrs. Cooper said there wasn't anything wrong and that she did not feel bad. Upon being further questioned, she told Mrs. Rollins that appellant and his wife had gone over to a neighbor's house and had not invited her to go with them. She said that Mrs. Cooper returned home with her and while there they talked about conditions in the Cooper home; that Mrs. Cooper said appellants had lately become accustomed to leaving her at home because they did not care to have her along with them, and that appellants had been after her lately to make a will but that she didn't think she would do so. She said that "poor old daddy" didn't leave a will and since "he was willing for his stuff to go like it was supposed to, that was the way she wanted it to go." Henry Rollins' testimony was very similar to that of his wife. He testified that upon another occasion he went to Mrs. Cooper's home and found her weeping. He said that he asked her concerning the cause of her apparent distress and she said appellant, Ray Bethel, was going to leave the farm; that he had threatened to leave the farm if she did not make a will, and she did not want to make a will. He said he asked Mrs. Cooper what kind of a will appellant wanted her to make and she said "he wanted her to will it to him and leave all of the children out", but that "she was not going to do it." He also testified that he heard portions of the conversation at his home which had been detailed by Mrs. Rollins as having taken place on the Sunday afternoon when they were eating ice cream.

■ Appellants objected to this testimony and, their objection being overruled, they presented to the court a motion requesting the court to instruct the jury not to consider it, which was also overruled. This testimony presented nothing more than statements and declarations of the testatrix and afforded no substantial proof of duress or undue influence. They were not admissible for that purpose. No independent proof of undue influence had been adduced and these statements of these witnesses were mere recitals of fact. The statements of the testatrix were made some ten days or two weeks prior to the execution of the will and could not be considered res gestæ. It has many times been held by the courts that such testimony is not admissible but is the purest kind of hearsay. In the case of Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138, 1145, this identical question was elaborately discussed by Justice Phillips and the rule in this state concerning the admissibility of such statements definitely and finally settled. Among other cogent statements and logical reasoning found in the opinion in that case, Justice Phillips said: "The testator's declaration, testified to by this witness, that 'Mrs. Scott had been after him to make a will' was clearly inadmissible. It was but a naked statement of fact, a plain narration of a past occurrence, which Scott's declarations were wholly incompetent to prove. Such a statement, made by him as to what his wife had been trying to get him to do, was as certainly inadmissible as a similar statement by any other person. The effect of its admission was to permit the use of his declarations for the purpose of establishing an effort by Mrs. Scott to have him make his will, or, in the light of the issue in the case and other testimony such as we have referred to, an attempt by her to exercise the undue influence charged, since, under the allegations, to induce the testator to make his will was essentially the prime object for which it was exerted, a purpose for which the law emphatically says a testator's declarations cannot be used, as upon such issue they are purely hearsay." See also Shofner v. Shofner, Tex.Civ.App., 105 S.W.2d 418; Rankin v. Rankin, 105 Tex. 451, 151 S.W. 527; Taylor v. Small, Tex.Civ.App., 71 S.W.2d 895; Beemer v. Beemer, 256 Ill. 312, 100 N.E. 135.

It may be that, under some circumstances, the emotional condition of mind evidenced by Mrs. Cooper's weeping upon the occasions testified about by these witnesses would have been admissible upon an issue as to her mental capacity to execute a will, but as that issue was waived and not insisted upon by appellees it was immaterial for any purpose in this case. This leaves

the testimony as a recital of the bare statements made by Mrs. Cooper to the effect that appellant and his wife had been importuning her to execute a will devising her property to them and, as said by Justice Phillips in the above quotation, they were no more admissible as proof of the facts indicated by them than would have been similar statements of any other person. Appellees contend that the testimony was admissible as showing the effect which the importunities of appellants had upon the testatrix, Mrs. Cooper. We think there are two cogent reasons revealed by the record which refute this contention. In the first place, a thorough search of the record fails to reveal any testimony whatever or any circumstance which in any manner indicates that appellants exercised any influence, undue or otherwise, upon Mrs. Cooper or that they did or said anything to her for the purpose of inducing her to execute the will save only the hearsay statements testified to by these witnesses, and these statements, as we have held, were not admissible nor competent to prove undue influence. Secondly, Mrs. Rollins testified that Mrs. Cooper had several times said to her, soon after the death of Mr. Cooper, that she (Mrs. Cooper) had never had any experience in transacting business matters and seemed greatly confused because there had suddenly been thrust upon her the responsibility of attending to the matters of business that had always been discharged by her husband. Mrs. Rollins said she found Mrs. Cooper weeping on a number of occasions and when asked what was wrong, she would say: "Well, I haven't any home that I can ask my friends in. You know you don't feel welcome to come here like you did. It is not like it was when daddy was here. I could ask my friends in my home", and that Mrs. Cooper seemed greatly grieved. In view of this testimony of Mrs. Rollins, the emotional condition of mind in which she and her husband found Mrs. Cooper on the occasions testified to by them no more proved that Mrs. Cooper was affected by importunities of appellants that she make a will than it was proof that she was grieving over the loss of her husband and overwhelmed with the responsibility of attending to business affairs which had been thrust upon her by his death.

The testimony shows that on the occasion of the execution of the will, appellant, Ray Bethel, conveyed Mrs Cooper in her automobile from the farm to Matador and escorted her to the office of Mr. Hamilton, the attorney who drew the will. It is shown also that he remained in the office while the will was being dictated, written and executed. Appellees insist that this, together with the fact that appellants had ample opportunity to exercise undue influence upon Mrs. Cooper, was sufficient to warrant the jury in returning their verdict to the effect that undue influence was exerted. The testimony of Mr. Hamilton and also of appellant shows without dispute that, while appellant accompanied his grandmother to the attorney's office and remained there during the time the will was being written and was there when she signed it, he had nothing whatever to say and made no suggestions of any kind either to her or to Mr. Hamilton. In the absence of any proof of undue influence exercised by appellant over the testatrix, his mere presence in the office of the attorney during this time is a matter of no significance whatever. Indeed, it was quite natural that he be there. He and his family lived in the house with Mrs. Cooper. He performed most of the duties that were necessary in conducting the farm and business matters that arose concerning its operation. Mrs. Cooper was an aged woman, and it seems that whenever she desired to make trips away from home, she called upon appellant to drive the car and take her wherever she desired to go. It is shown without dispute that she requested him to take her to Matador on the occasion when she executed the will and we see nothing in this, standing alone, which would indicate he had exerted undue influence upon her. Upon reaching the attorney's office, Mrs. Cooper informed him that she desired to make her will and informed him of the disposition she wished to make of her property. He dictated the will in her presence, and after it was typewritten by his stenographer, Mr. Hamilton read it over to Mrs. Cooper and she signed it. The attorney testified that nothing happened there which indicated to him that Mrs. Cooper's wishes were otherwise than those expressed in the will. She paid Mr. Hamilton his fee for the service which he had rendered by issuing her own cheque therefor. She took the will home with her and laid it away in a private box and the record indicates she told no one except Mrs. Eula Bethel where she had placed it and no one but Mrs. Cooper had possession of it until after her death.

This leaves nothing but opportunity alone to prove undue influence and the law is well settled that mere opportunity to do so is no proof whatever that undue influence has actually been exerted.

A careful search of the record now before us has failed to reveal any evidence which would form the basis of the verdict returned by the jury upon the question of undue influence, and we think, in so far as the allegations of undue influence are concerned, the verdict of the jury is wholly without competent evidence to support it.

Appellees contend that the judgment should be affirmed because, they say, it is correct as a matter of law regardless of the assignments of error urged by appellants relating to the issue of undue influence. They base this contention upon the contract of settlement that was executed by some of the heirs of the testatrix, including Ray Bethel, the devisee in the will, in which it was agreed that the will was void and the property should descend to the heirs under the law of descent and distribution. Appellant, Ray Bethel, alleged and testified that his assent and signature to the contract were procured by fraudulent representations of the appellees to the effect that the will was void because it did not reflect the date of its execution. No special issue was submitted to the jury and none requested upon this issue. In fact it seems to have been ignored by the court and litigants. Appellees state in their brief that, in view of the finding of the jury upon the issue of undue influence, the court did not deem it necessary to pass upon the issues raised by the allegations concerning the contract. The judgment entered by the court indicates that it was based upon the finding of the jury in answer to the single special issue which was submitted to them upon the question of undue influence. Appellant, Eula Bethel, sought to establish her homestead rights in two hundred acres of the land involved upon the ground that the will was legal and valid as such and that under the law her husband could not affect her interest therein nor deprive her of her acquired homestead rights by the contract of settlement which he executed. The interest in the land involved here consists of an undivided one-half interest in 640 acres, and if Mrs. Bethel is entitled to a homestead right in 200 acres or a smaller amount,

as the undisputed testimony in the present record shows she was, she would have the right to protect it and her husband could not, by contract or otherwise, deprive her of it without her consent. Texas Land & Mtg. Co. v. Cooper, Tex.Civ. App., 67 S.W. 173, and authorities there cited. The amount of land which she could thus claim, however, depends upon an adjudication of the issues concerning the validity of the will and all of these matters will probably be adjudicated upon another trial.

Because of the errors pointed out, the judgment of the court below will be reversed and the cause remanded.