**BONILLA et al. v. LUJAN et al.**

**No. 11229.**

Court of Civil Appeals of Texas.
San Antonio, Texas.

Jan. 27, 1943.

Rehearing Denied Feb. 24, 1943.

Arnold W. Franklin, of Poteet, H. D. Barrow and R. R. Smith, both of Jourdanton, and Herbert Oliver and John Peace, both of San Antonio, for appellants.

A. N. Steinle, Leon Steinle, and Frank W. Steinle, all of Jourdanton, and Johnson & Rogers and Nat L. Hardy, all of San Antonio, for appellees.

MURRAY, Justice.

This is a will contest over the will of Simona Esparza Rodriguez. Nievas Ramos Lujan and his wife, appellees herein, were the beneficiaries under the alleged will of Mrs. Rodriguez. The alleged will was offered for probate in the County Court of Atascosa County, Texas, by Nievas Ramos Lujan, and a contest of the probate of same was duly filed in that court by Melchora Bonilla and others, appellants herein. The grounds of contest were lack of testamentary capacity and undue influence. A hearing was had in the county court and an appeal taken from the judgment there entered to the District Court of Atascosa County. Upon a trial in the District Court certain issues were submitted to a jury and, in keeping with their verdict, judgment was rendered admitting the will to probate. From this judgment contestants have prosecuted this appeal.

Appellants' brief contains nine points upon which they rely for a reversal of the judgment of the trial court. The points relate to such matters as improper remarks of the trial judge in the presence of the jury, errors in the charge to the jury, and

the admission and exclusion of evidence. In answer to all of appellants' points appellees submit one counter-point to the effect that "there was no evidence sufficient to warrant submission to the jury of, nor to justify a finding favorable to appellants on, the issue of testamentary capacity, and likewise there was no evidence sufficient to warrant the submission to the jury of, nor justify a finding favorable to appellants on, the issue of fraud or undue influence."

It is apparent that if there were no fact issues raised by the evidence to be submitted to the jury, then the errors complained of by appellants all become immaterial. Accordingly, we will discuss this counter-proposition first.

Appellants concede that no fact issue as to Mrs. Rodriguez' testamentary capacity was raised by the evidence. From page 16 of appellants' supplemental brief we quote as follows: "It will be noted with interest that. nowhere in appellants' brief have they made any complaint of the court's action or any error pertaining to the question of testamentary capacity."

In view of this admission we pass to the question of fraud and undue influence. There are over seven hundred pages in the Statement of Facts, and it will be impossible to here set out all the testimony that might have some bearing upon this issue, but we will be compelled to confine ourselves to the main points relied upon by appellants to show fraud and undue influence. Jose Rodriguez and Simona Esparza Rodriguez were husband and wife and lived on a ranch in Atascosa County, Texas. The value of their estate was in the neighborhood of $50,000. They had no children but did have collateral kin. Jose Rodriguez died about August, 1937, and left a will devising all of his property to his wife. After his death Nievas Ramos Lujan and his wife, Emma Lujan, came to live with Mrs. Rodriguez. Mr. Lujan became the boss of the ranch. Mrs. Rodriguez was at the time in the neighborhood of eighty years of age. She would give Lujan a check for a large sum of money which he would deposit in the bank in his own name and from which deposit he would pay the current expenses of the ranch. When this deposit would be near exhaustion Mrs. Rodriguez would give Lujan another large check. Shortly after her husband's death, Mrs. Rodriguez went to James A. Walton, Esq., who had practiced law for fifty years

in Atascosa County and had always transacted the legal business of the Rodriguezes, and had him prepare her will. In this will she left her entire estate to the Lujans, with the exception of one bequest of 100 acres of land, which she devised to one Mrs. Davilla. Thereafter, on or about April 1, 1940, Mrs. Rodriguez went to the office of Alfred N. Steinle, Esq., in company with Mrs. Lujan, and had him rewrite her will leaving out the bequest to Mrs. Davilla, giving as her reason therefor that Mrs. Davilla had talked too much. Thus the new will left all of her property to the Lujans, regardless of the fact that Mrs. Rodriguez had then living sisters, nieces and nephews. This will was executed by Mrs. Rodriguez about one year before her death. The will was witnessed by one Elmo Ferguson, who was the Spanish interpreter for the District Court of Atascosa County, and one Frank Lozano. Steinle called these two witnesses to his office without any suggestion from Mrs. Rodriguez, but the witnesses were apparently agreeable to her. Steinle testified he called these two witnesses because they spoke Spanish fluently and Mrs. Rodriguez spoke very little English. After the execution of the said will Steinle destroyed the first will in the presence of Mrs. Rodriguez. Neither of the Lujans were related to Mrs. Rodriguez, but Mrs. Lujan was related to her deceased husband. Some of the witnesses testified they had never seen the Lujans at the home of the Rodriguezes more than two or three times prior to the death of Mr. Rodriguez. The Lujans were hard up before they went to live with Mrs. Rodriguez. About the time the first will was executed Mrs. Rodriguez became the patient of Dr. C. C. Schotts of Pleasanton. Dr. Schotts testified in part as follows:

"Q. What was the occasion of her first visit to your office and what, if anything, did you prescribe for her on that occasion? A. Well, as to the exact—she came to me for different complaints, and as to telling you exactly what I gave her the first time she was there. I am not qualified to answer that, but in the course of the time that she was there she had several minor complaints, a feeling of dizziness and weakness, a feeling of just general malaise, and at times, as I remember, she complained of some gastric distress, and I found her with a little bit of elevation of her blood pressure and also an anemia, a diminished

number of red blood cells. In the course of the visits she made to my office she wasn't a severely sick woman, she was one of these kind that come to see the doctor with things that are not of a serious nature.

"Q. Was there any serious ailment that she was suffering with at any of these times? A. Not preceding her death, no, sir.

"Q. Not until the last illness? A. No, sir."

Dr. Schotts also testified that Mrs. Rodriguez was of sound mind.

Mrs. Davilla, who was given a bequest of 100 acres of land in the first will but denied it in the second will, testified that about the time of the execution of the second will Mrs. Rodriguez "had ideas and she then would repeat things over and over."

Pedro De Ortiz testified that Mrs. Rodriguez had told him "that Mr. Lujan attended to everything." Mrs. Rodriguez hesitated to sign a certain paper and Lujan told him he could make Mrs. Rodriguez sign the paper.

Ysidro Bonilla, Jr., testified that Mrs. Rodriguez told him that she could not say anything about a certain transaction "because Mr. Lujan was the boss." There was other testimony as to other remarks made by Mrs. Rodriguez.

The evidence further shows that A. N. Steinle, Esq., had never represented Mrs. Rodriguez or her husband before he wrote the will for her. Mrs. Lujan first came into Steinle's office and told him that Mrs. Rodriguez had some business she wanted attended to, after which she left the office and returned with Mrs. Rodriguez.

Ferguson, one of the witnesses to the will, testified that when Mrs. Rodriguez was asked as to whom she wanted to make the will, she said Mr. Lujan; the will, however, was made to both Mr. and Mrs. Lujan. Mr. Lujan gave Steinle a check in the sum of $7.50 in payment for the writing of the will. This check was signed by Lujan personally, as were all checks given in connection with the Rodriguez ranch.

■ We are of the opinion that the evidence does not raise the issue of undue influence. In the first place, the hearsay statements attributed to Mrs. Rodriguez cannot be relied upon as direct proof of undue influence. They may be relied upon only to show her state of mind after the undue influence is established by other competent and sufficient evidence. Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138; Shofner v. Shofner, Tex.Civ.App., 105 S.W.2d 418; Rankin v. Rankin, 105 Tex. 451, 151 S.W. 527; Taylor v. Small, Tex.Civ.App., 71 S.W.2d 895; Bethel v. Yearwood, Tex.Civ.App., 142 S.W.2d 927.

■ When these hearsay statements are disregarded there is no evidence to show undue influence. The most that could be said is that an opportunity to exercise undue influence was shown which, of course, is insufficient. Stolle v. Kanetzky, Tex. Civ.App. 259 S.W. 657; Maul v. Williams, Tex.Civ.App., 88 S.W.2d 1087; McCannon v. McCannon, Tex.Civ.App., 2 S.W.2d 942; Whitney v. Murrie, Tex.Civ.App., 264 S.W. 270; Salinas v. Garcia, Tex.Civ.App. 135 S.W. 588.

■ Appellants contend that there was an issue of fraud, separate and distinct from undue influence, which should have been submitted to the jury. We overrule this contention. There was neither pleading nor proof raising a separate and independent issue of fraud. The only allegation or proof relating to fraud was in connection with undue influence.

■■ Appellants also complain because certain evidence was excluded by the court. This evidence consisted of the appeal bond given when the case was appealed from the county court to the district court. It was signed by A. N. Steinle, as surety, and was offered for the purpose of showing that Steinle was an interested witness. This bond recited that the county court had denied probate of the will. It would have been improper to have read this part of the bond to the jury, and the court properly excluded the bond from evidence. If some part of the bond might have been admissible it was the duty of appellants to offer only that part and, having offered the entire bond in evidence, they are not now in a position to contend that the court should have admitted certain portions of the bond. However, the bond could have no bearing on the issue of undue influence.

Accordingly, the judgment of the trial court is affirmed.