William P. TAYLOR, Jr., Appellant,

v.

Isabelle TAYLOR, Appellee.

No. 12809.

Court of Civil Appeals of Texas.

San Antonio.

May 25, 1955.

Rehearing Denied June 22, 1955.

Dibrell, Gardner, Dotson & Graham, Sam J. Dotson, San Antonio, C. Vernon Thompson, Chicago, Ill., for appellant.

Baskin, Casseb & Casseb, Paul E. Casseb, John M. Gilliland, Frank J. Baskin, San Antonio, for appellee.

NORVELL, Justice.

This is an appeal from a judgment of the district court ordering a certain instrument dated August 3, 1953, admitted to probate as the last will and testament of William P. Taylor, deceased. The appellee is the widow of the testator, while the appellant is a son by a former wife. The appellee presented the will for probate in the County Court, where her application was granted

over the protest of appellant. An appeal was taken to the District Court where the case was submitted to the jury upon two special issues,—the jury finding that the instrument of August 3, 1953, was wholly in the handwriting of William P. Taylor and that such instrument was written by Taylor as a result of undue influence exerted upon him by the appellee, Isabelle Taylor. Upon motion, the district judge set aside the jury's finding upon the issue of undue influence, as being without support in the evidence, and ordered the tendered testamentary declaration admitted to probate as the last will and testament of William P. Taylor, deceased. Rule 301, Texas Rules of Civil Procedure.

Appellant submits the case here upon fifty points of error. However, the primary contentions seem to be that the will involved was based upon a contractual arrangement entered into between William P. Taylor and Isabelle Taylor, and as it was ineffective as to Isabelle Taylor, it was likewise ineffective as to William P. Taylor; that under the evidence, the issue of testamentary capacity should have been submitted to the jury, and that the court erred in disregarding the jury's answer to the undue influence issue. The jury's finding that the instrument offered for probate was wholly written by William P. Taylor has ample support in the evidence and no reversible error is shown with reference to the trial judge's ruling upon the admission of evidence bearing upon this issue.

The instrument found by the jury to be wholly in the handwriting of William P. Taylor was as follows:
"August 3rd 1953

"Wm P. Taylor
and
Isabelle Taylor

"(1) Being of Sound Minds, and disposed to make all future provisions possible; and about to embark on possibly hazardous activities, we make the following Will.

"(2) If either of us survive, all of our estates, properties, interests, businesses, investments and any residues, become the property of the survivor.

"(3) Either survivor will protect all of his or her interests to the utmost, in case of any litigation.

"(4) Any beneficiary of this will, instituting any litigation is automatically cut off; with the will hereof $1.00 in lieu of any possible claims.

"(5) The Estate, constituting: The Business; the Bank Accounts, the Investments, the House, and any other Values; the money in cash, the prospects of future earnings; and all else, is included.

"(6) To My Son; who has never contributed anything but sadness; lack of consideration of my condition, and who has actually contributed to my general misery, I will $1.00. If any more is ever claimed, every effort will be expended to thwart this.

"(7) My mother (Wm. P. Taylor speaking) If both of us my wife and I should be deceased, and my mother survive; all of the estate will be placed in a Trust Fund, paying her whatever her needs may be. But none of it shall revert to my son, his wife, or my grandson.

"(8) After her death, 70% of the Trust shall be expended upon a building fund, and promotion of The Mayan Order, 30% shall be divided as follows: —Chas. Hefner 70%, of this Machesmay 20%, Gilbert Jackson and Cora Johnson 5% each. The Home shall become a Library and Museum of Mayanry, a nucleus of the building program.
                "Signed: Wm. P. Taylor
                        "Isabelle Taylor
"Witnesses: ————; ————"

■ Although two spaces were provided for witnesses, none signed and the declaration was consequently ineffective as a testamentary disposition on the part of Isabelle Taylor. Articles 8283 and 8284, Vernon's Ann.Tex.Stats. However, although inoper-

ative as to the wife, it was nevertheless effective as to William P. Taylor. Garland v. Meyer, Tex.Civ.App., 169 S.W.2d 531; Curtis v. Aycock, Tex.Civ.App., 179 S.W.2d 843; City of Corpus Christi v. Coleman, Tex.Civ.App., 262 S.W.2d 790; Dufner v. Haynen, Tex.Civ.App., 263 S.W.2d 662; 57 Tex.Jur. 464, Wills, § 687.

The pertinent facts relating to the contentions of testamentary capacity and undue influence may be briefly summarized as follows:

Appellant, William P. Taylor, Jr., was born in 1918, and reared by his paternal grandparents, Harry A. Taylor and Ida M. Taylor. In 1935, William P. Taylor was married a second time, his wife being the appellee, Isabelle Taylor. They accumulated considerable community property, consisting of a publishing enterprise devoted primarily to a study of the ancient Mayan civilization of Mexico. In 1941, Harry A. Taylor having died, Mrs. Ida M. Taylor and William P. Taylor, Jr., moved to San Antonio and lived with William P. Taylor and Isabelle Taylor. In January of 1942 William P. Taylor, Jr., went to Fort Monmouth, New Jersey, and enlisted in the Signal Corps of the United States Army. In August, 1943, he married Mary Constance Biermann in the State of New Jersey and shortly thereafter went overseas and saw action in the South Pacific theatre of operations. One son, William P. Taylor III, was born to this marriage. It appears that in 1944 William P. Taylor, Jr., and his wife and son visited his father and stepmother in San Antonio. It appears that Mary Constance Taylor had intended to stay in San Antonio until the war was over, but instead returned to the east. There was testimony that this change in plans was occasioned by objections made by Isabelle Taylor. In November, 1945, William P. Taylor, Jr., was discharged from the Army and thereafter went to Chicago where he secured a position as a radio engineer and established a home for his wife and child. In February, 1946, William P. Taylor and the appellee went to Chicago. They saw the son and there seems to have been some discussion about the son's returning to San Antonio and entering his father's business. However, nothing came of this and the elder Taylor returned to San Antonio and was stricken with paralysis on May 5, 1946. He was confined to a hospital for a period of four months and remained paralyzed from his waist down until the time of his death. Shortly after the execution of the disputed will, apparently the next day, August 4, 1953, William P. Taylor and his wife left San Antonio and went to Los Angeles, California. On August 13, 1953, Taylor became seriously ill of a digestive complaint and a doctor was called to attend him. He was transferred to the Good Samaritan Hospital in Los Angeles, where he died the following day. The cause of death was diagnosed as acute pancreatitis of approximately seven days' duration.

It appears that although William P. Taylor remained partially paralyzed for something over seven years, he nevertheless, with his wife's assistance, continued to look after his publishing business. Numerous witnesses testified as to his being sound mentally. Even after he was stricken with pancreatitis, the attending physician testified that his mental faculties were unimpaired. In our opinion there was no issue of lack of testamentary capacity. to go to the jury. It is true that the burden of establishing mental soundness is upon the proponent of the will, but where, as here, the proponent has made out a prima facia case of testamentary capacity at the time the will was executed and the contestant has not destroyed such case by evidence introduced, the will should be admitted to probate. Navarro v. Garcia, Tex.Civ.App., 172 S.W. 723.

It is urged that the evidence is sufficient to raise the issue that the will was executed while the testator was suffering from an insane delusion that he had been mistreated by his son. It is shown by the record that the son never visited the father after the latter suffered his paralytic stroke in May, 1946. Apparently, the last meeting between the two took place in February of that year, and while the record is not entirely clear as to details (perhaps by reason of the opera-

tion of the dead man's statute, Article 3716, Vernon's Ann.Tex.Stats.) it is inferable that some difficulty arose between the father and son in 1944, because of objections made to the younger man's wife staying in San Antonio until the end of the war. It is certain, however, that thereafter the relationship between father and son deteriorated and ultimately the feeling between them became extremely bitter. The will itself discloses the depth of the father's feelings, as do other written evidences, such as diary entries and letters received in evidence. This unfortunate feeling of hostility was in turn reciprocated by the son as reflected by his letters which were received in evidence.

The Supreme Court in the recent case of Knight v. Edwards, Tex., 264 S.W.2d 692, clearly points up the distinction between a false belief or simple delusion, on one hand, and an insane delusion, on the other. An insane delusion was defined as the belief of a state of supposed facts that do not exist, and which no rational person would believe. It was also said that a delusion cannot be an insane one if it is founded upon any evidence whatever. In Navarro v. Rodriguez, Tex.Civ.App., 235 S.W.2d 665, 668, this Court said that, " 'A mere mistaken belief or an erroneous or unjust conclusion is not an insane delusion if there is some foundation in fact or some basis on which the mental operation of the testator may rest, even though the basis may be regarded by others as wholly insufficient.' "

■ If we take as the state of supposed facts, the indifference of the son toward the father in the last seven years of the latter's life, it will be seen that a belief that the son was indifferent is not wholly without foundation. However ill-founded the basis may be, the fact remains that the son did not see the father after the latter suffered a paralytic stroke in 1946. There is testimony indicating that the son did not visit his father because he was advised not to bring his wife with him. It may be thought that under these circumstances the refusal of the son to come to San Antonio was entirely justified, but that was not the question before the trial court. The question was whether or not there was some basis for the belief on the part of his father that the son had neglected him and was indifferent to his welfare. It appears conclusively that a basis for such belief existed and hence was not the result of an insane delusion. The trial court did not err in refusing to submit an issue upon testamentary capacity.

The testimony with reference to undue influence is in somewhat similar status. We regard the recent decision of the Supreme Court in Curry v. Curry, Tex., 270 S.W.2d 208, as controlling upon the point. In many respects the factual situation disclosed by that opinion is analogous to that now before us. The testator in the present case, although only fifty-three years of age at the time of his death, had been physically incapacitated for a period of seven years as a result of a paralytic stroke. The will involved was executed shortly prior to his death, but apparently before the onslaught of his fatal illness. Except for such inferences as may be drawn from testimony as to the testator's paralyzed condition and his excessive use of intoxicating liquors at times, there is no evidence of weakness of will or severe mental disturbance. As above indicated, the direct testimony of those who observed the testator during his last days was to the effect that he remained mentally alert until shortly before his demise.

■ "Undue influence invalidating a will is that which substitutes the wishes of another for that of the testator." 57 Am.Jur. 258, Wills, § 350. There is nothing in the present record which will justify the hypothesis that at the time the will was executed the testator wanted to leave his property to his son but that his will to do so was overridden by the appellee. The rift between father and son was of too many years standing to render this thesis supportable. Diary entries, memoranda placed upon the margins of letters and the like, indicated the testator's resentment toward and disappointment with his son, extending over a period of years prior to the execution of the will. The decision to disinherit the son did not represent a sudden change in attitude on the part of the testator, but was the

natural consequence of years of estrangement.

We are further of the opinion that there is no legitimate evidence upon which it can reasonably be inferred that the appellee was responsible for this estrangement through some species of fraud and misrepresentation. About all the evidence indicates in this regard is that upon one occasion the appellee said, in the presence of the testator, that she did not believe that Junior, meaning the appellant, would work out very well in their publishing business and that in a telephone conversation between appellant and appellee, the latter had urged appellant to visit his father, but requested that he not bring his wife, because of the nervous condition of the father. From this species of testimony no reasonable inference of fraud can arise. Curry v. Curry, Tex., 270 S.W. 2d 208.

It is not the province of this Court, nor of the court and jury below, to decide whether or not William P. Taylor made a just and equitable disposition of his property. The statute of wills provides that "every person aged twenty-one years or upward, or who may be or may have been lawfully married, being of sound mind, shall have power to make a last will and testament, under the rules and limitations prescribed by law." Article 8281, Vernon's Ann.Tex.Stats. The effectiveness of the exercise of this right is not dependent upon the decision of any tribunal or governmental authority as to wherein lies the right of a family dispute. The unfortunate affairs of the Taylor family we behold at best through a glass darkly. As to who was right as between the crippled and perhaps neurotic father and the son, who for reasons deemed sufficient to him did not visit his father during the latter's declining years, presents a question beyond the ken of judicial bodies. If the owner of property possesses testamentary capacity and the will is his and not that of another, and the disposition of property violates no rules of public policy, the testamentary declaration should be respected. The trial court correctly disregarded the jury's answer to the

undue influence issue and rendered judgment admitting the will to probate. Cullinan v. Cullinan, Tex., 275 S.W.2d 472; Curry v. Curry, Tex., 270 S.W.2d 208; Burgess v. Sylvester, 143 Tex. 25, 182 S.W.2d 358; Bonilla v. Lujan, Tex.Civ.App., 168 S.W.2d 691; Salinas v. Garcia, Tex.Civ. App., 135 S.W. 588.

All of appellant's points of error are overruled and the judgment of the district court is affirmed.